Argued and submitted August 24, reversed and remanded November 14, 2001

In the Matter of the Compensation of
Robert E. Hill, Claimant.

Robert E. HILL,
*Petitioner,*

*v.*

QWEST,
*Respondent.*

00-00088; A112816

35 P3d 1051

Robert F. Webber argued the cause for petitioner. With him on the brief was Black, Chapman, Webber & Stevens.

Marjorie A. Speirs argued the cause for respondent. With her on the brief were Janet M. Schroer and Hoffman, Hart & Wagner, LLP.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Claimant sought workers' compensation benefits for a back condition. Qwest (employer) issued a denial based on medical evidence that the condition was caused by degeneration of the spine unrelated to employment. On administrative review, claimant argued that employer had already accepted an earlier claim that included the degenerative back condition and that employer was therefore precluded from subsequently denying it. Employer responded that its earlier acceptance did not include the underlying degenerative back condition, and the Workers' Compensation Board (Board) agreed. Claimant seeks judicial review. We reverse and remand.

Claimant injured his low back in 1987. The claim was closed later that year with an award of 25 percent unscheduled disability. In 1990, claimant experienced an episode of acute low back pain; an MRI at the time demonstrated degenerative changes. Another episode of acute pain occurred in 1991.

In August 1992, petitioner and employer entered into a claims disposition agreement (CDA) drafted by employer, which stated that "the accepted conditions subject to this claim disposition agreement are low back strain, low back disability and psychological conditions including depression."

In 1997 and 1999, claimant again experienced episodes of low back pain. A panel of doctors examined claimant at that time, reviewed his medical records and concluded that he had experienced exacerbations of lumbosacral pain associated with documented degenerative changes. The panel also concluded that claimant's current symptom, waxing and waning pain, was directly related to the underlying degenerative changes. Dr. Williams reported the panel's opinion that the effects of claimant's 1987 compensable injury had fully and completely resolved. Williams later stated in a deposition that the degenerative changes that were apparent in the 1990 MRI probably preexisted the 1987 compensable claim. Based on the panel's opinion, employer denied responsibility for claimant's current condition.

At a hearing on that denial, claimant argued that one of the conditions employer accepted in the 1992 CDA was "low back disability," that "low back disability" was a symptom or result of the underlying degenerative condition, and that, therefore, under the doctrine announced in *Georgia-Pacific v. Piwowar,* 305 Or 494, 753 P2d 948 (1988), employer had accepted the underlying degenerative condition and was precluded from denying a claim based on it. The administrative law judge (ALJ) disagreed with the premise of that argument, namely that the CDA could be interpreted as an acceptance of low back *disability.* Rather, the ALJ concluded that "the CDA recognizes only acceptance of the specific condition of a low back *strain* and the permanent disability awarded to that date for the specific condition of low back strain." (Emphasis added.) According to the ALJ, the term "low back disability" in the CDA was not a separate condition or symptom that employer agreed to accept; rather, it was a reference to the *award* of disability that claimant had received in compensation for his back strain. The Board accepted the ALJ's conclusion without comment. We, however, disagree.

In *Piwowar,* the employer accepted a claim for a "sore back" and subsequently discovered that the sore back was a symptom of an underlying degenerative condition, ankylosing spondylitis. *Piwowar,* 305 Or at 497. The employer maintained that it was not thereafter required to pay compensation for the underlying disease. *Id.* The Supreme Court, however, noted that the employer's position would lead to "instability, uncertainty and delay" and held that acceptance of a particular condition or symptom automatically included "acceptance of the disease causing that condition." *Id.* at 501. Thus, in accepting a "sore back," the employer accepted the ankylosing spondylitis, even though the employer was not in fact responsible for that disease. By contrast, had the employer accepted only a back strain, that acceptance would not have implied acceptance of the disease because the strain and the disease "are two separate infirmities (unless of course one is merely a symptom of the other)." *Id.*

Subsequent cases have confirmed and refined this doctrine. In *Boise Cascade Corp. v. Katzenbach,* 104 Or App

732, 735, 802 P2d 709 (1990), *rev den* 311 Or 261 (1991), this court held that, when the employer accepted "right wrist strain," it did not automatically accept avascular necrosis because the two infirmities—the strain and the preexisting disease "are separate conditions," that is, the strain was not caused by, nor was it a symptom of, the disease. In *Granner v. Fairview Center*, 147 Or App 406, 935 P2d 1252 (1997), we held that when the employer's insurer accepted a "right patellar dislocation" (dislocated knee), it did not necessarily and as a matter of law also accept a preexisting condition, "bilateral knock knee deformity," because substantial evidence supported the Board's finding that the preexisting condition was not the "sole cause" of the dislocation—that is, that the dislocation was not merely a "symptom" of the preexisting condition. *Id.* at 409-11. In *Freightliner Corp. v. Christensen*, 163 Or App 191, 986 P2d 1263 (1999), we held that, when the employer accepted a claim for "low back pain," it also accepted "all the conditions that the medical evidence shows underlie the low back pain, including claimant's preexisting degenerative back conditions." *Id.* at 196.

The cases, then, establish that when an employer accepts a symptom such as "back pain" or "sore back," or a condition such as "dislocated knee," it also accepts the underlying preexisting disease or condition that is the cause of the accepted symptom or condition; however, if the accepted condition or symptom and the preexisting condition are separate conditions, that is, if there is no cause-and-effect relationship between them, then the accepted condition does not include the preexisting condition or disease, and an employer may subsequently deny responsibility for it in a later claim.

■ To apply that rule here, we must resolve the following questions: Did employer, in accepting "low back disability," accept a condition separate from the "low back strain," or does the phrase "low back disability" simply modify or clarify the preceding phrase? That question revolves around the interpretation of the CDA, which is a question of law. *Neighbors v. Blake*, 167 Or App 343, 347, 3 P3d 172 (2000). If the answer is that "low back disability" merely modifies "low back strain," then "low back disability" was not included in the earlier acceptance and employer may deny responsibility

for it now.[1] If, however, employer accepted "low back disability" as a condition or symptom in addition to "low back strain," we must ask whether the disability was caused by the degenerative disc condition. That is a question of fact, which we review for substantial evidence. *Granner,* 147 Or App at 411. If the answer is yes, claimant prevails; if the answer is no, employer prevails.

■■ For several reasons, we conclude that the term "low back disability" is not merely a gloss on "low back strain," but an additional accepted condition. The relevant sentence within the CDA reads as follows: "The accepted conditions subject to this claim disposition agreement are low back strain, low back disability and psychological conditions including depression." We interpret a CDA as if it were a contract. *Neighbors,* 167 Or App at 347. That means we begin with the text and context, proceed to extrinsic evidence of the parties' intent if the text and context do not resolve all ambiguities, and, if ambiguity remains after the second step, resort to maxims of construction. *Yogman v. Parrott,* 325 Or 358, 361-64, 937 P2d 1019 (1997).

We begin with the word "disability." Employer argues that this word denotes neither a symptom nor a condition, but "the *classification* of a compensable claim for purposes of determining the amount of compensation." Employer points to the use of the word "disability" in several workers' compensation statutes to bolster that argument. We find that those examples work against employer, not for it. For example, employer cites ORS 656.214(1)(b), which defines "permanent partial disability" as "the loss of either one arm, one hand, * * * or any other injury known in surgery to be permanent partial disability." Employer also cites ORS 656.206(1)(a), where "permanent total disability" is defined to mean "the loss, including preexisting disability, of use or function of any * * * portion of the body[.]" In those statutes, the word "disability" refers to a condition of incapacity, an "injury" that renders the injured person less than completely able—in other words, a condition, injury, disease or symptom. Not surprisingly, this statutory use of the term reflects

---

[1] Claimant does not argue that the strain was caused by the preexisting condition.

its normal usage. *Webster's Third New International Dictionary*, 642 (unabridged ed 1993), contains the following definitions: "the condition of being disabled[;]* * * a physical or mental illness, injury, or condition that incapacitates in any way."[2]

■       Further, within its sentence, the phrase "low back disability" is one of three coordinate predicate complements of the word "condition." The other two terms ("low back strain," "psychological conditions") are unambiguously symptoms, conditions, or diseases and not "classifications."

In short, we find no ambiguity in the disputed sentence: The CDA accepts three different conditions, not two conditions surrounding a term of legal classification. Even if there were an ambiguity, however, the outcome would not differ. Finding no extrinsic evidence of the parties' intentions, we would reach the third level of contract interpretation, maxims of construction. In particular, we would rely on the maxim that an ambiguous contract is construed against the drafter. *Neighbors*, 167 Or App at 347 ("Even if the CDA provision were to be considered ambiguous, any ambiguity * * * is resolved against insurer as the drafters[.]"). So construed, the CDA in this case includes employer's acceptance of claimant's low back disability.

■       That conclusion, however, does not resolve the case. Under *Piwowar* and subsequent cases, the 1992 acceptance of low back disability precludes employer from denying claimant's current condition—a degenerated spine—only if the degenerative condition of claimant's spine preexisted the low back disability *and caused it*. If claimant's low back disability in 1992 was unrelated to (not caused by, not a symptom of) the preexisting degenerated spine, then the preexisting degenerated spine was a separate condition from the accepted low back disability, and employer is not now precluded from denying responsibility for it. *Boise Cascade Corp.*, 104 Or App at 735 (acceptance of right wrist strain does not imply acceptance of preexisting disease); *Granner*,

---

[2] Another definition, "the inability to pursue an occupation or perform services for wages because of physical or mental impairment," makes no sense in defining a noun that is modified by the adjectival phrase "low back." One does not speak of a "low back inability to pursue an occupation for wages."

147 Or App at 409-11 (acceptance of dislocated knee does not imply acceptance of preexisting knock knee condition unless knock knee condition caused dislocation). Because the Board concluded that "low back disability" did not constitute a separate accepted condition, it did not reach the question whether that condition was a result of the preexisting disease. That is a question of fact that the Board should address on remand.

Reversed and remanded.