Argued and submitted March 8, reversed and remanded June 15, petition for
review allowed December 6, 2005 (339 Or 609)

INDUSTRA/MATRIX JOINT VENTURE,
an Oregon Joint Venture,
abn Matrix Service, Inc.,
*Appellant,*

*v.*

POPE & TALBOT, INC.,
an Oregon corporation,
*Respondent.*

0112-12723; A121936

113 P3d 961

Julia E. Markley argued the cause for appellant. With her on the briefs were Michael H. Simon and Perkins Coie LLP and Rodney R. Mills, J. Daniel Gragg, and Seifer Yeats Mills & Zwierzynski LLP.

Guy A. Randles argued the cause for respondent. With him on the opening brief were Charles F. Adams, Chad R. Chambers, and Stoel Rives, LLP. On the supplemental brief was Charles F. Adams.

Before Schuman, Presiding Judge, and Edmonds* and Wollheim, Judges.

SCHUMAN, P. J.

* Edmonds, J., *vice* Ceniceros, S. J.

## SCHUMAN, P. J.

After denying plaintiff's petition to compel arbitration of this dispute over performance of a contract, the trial court granted defendant's motion for summary judgment. Plaintiff appeals, arguing that an arbitrator, not the court, should have made the decision regarding arbitrability and that, in any event, even if the court was the proper forum for hearing the case, it erred in granting summary judgment. We agree with plaintiff's first contention and consequently reverse and remand.

Plaintiff is Industra/Matrix Joint Venture (plaintiff or Industra/Matrix), an entity consisting of Industra Service Corporation (Industra) and Matrix Service, Inc., (Matrix). Industra/Matrix was created for the limited purpose of entering into and performing two contracts with defendant Pope & Talbot, Inc., to install a bleaching system at defendant's paper mill in Halsey. When the contract was formed, and at all times during its performance, both Matrix and Industra held licenses from the Oregon Construction Contractors' Board (CCB), but Industra/Matrix, the joint venture, did not.

The parties executed the contracts, under which defendant was to pay plaintiff approximately $2 million for its services, in March and April 2000. The contracts contained identical provisions requiring the parties to arbitrate, with certain exceptions, "all disputes between the Owner and Contractor which are not settled satisfactorily" by preliminary measures short of arbitration, including submission of any dispute to a specified project engineer. The contracts also specified that, except as otherwise stated, "the provisions of The Arbitration Act of Oregon * * * shall apply to any arbitration hearings."

Plaintiff completed the work in October 2000. During the course of the project, defendant submitted numerous change orders, and plaintiff had to adjust its work due to structural and equipment errors. The parties dispute whether plaintiff submitted claims to the engineer as required under the contracts. In any event, plaintiff submitted a claim summary in November 2000 requesting $1,892,538 in additional costs. Defendant refused payment,

and plaintiff filed a construction lien against defendant's Halsey mill. After unsuccessful settlement attempts, plaintiff brought this action for breach of contract and *quantum meruit*, seeking $2,600,000 in damages—the amount plaintiff claimed it had expended in labor, materials, and equipment ($5,000,000) minus the amount defendant had paid ($2,400,000).

At the close of discovery, plaintiff petitioned the court to abate litigation and compel arbitration. ORS 36.315 (2001); ORS 36.310 (2001).[1] Plaintiff argued that, because the contracts governed the parties' obligations with respect to a project involving interstate commerce—Matrix had headquarters in Oklahoma and Industra is based in the State of Washington—the Federal Arbitration Act (FAA), 9 USC sections 1 to 16, applied, notwithstanding the contracts' Oregon choice of law provisions. Further, according to plaintiff, under the FAA and its case law, an arbitrator, rather than the court, decides whether contractual or statutory conditions precedent to arbitration have been met, as well as a claim's merits. Thus, according to plaintiff, applicable law (the FAA) required the court to submit the entire matter to arbitration.

In response, defendant argued that the parties' choice of Oregon law extended to all arbitration matters and that, under Oregon law, the court rather than the arbitrator must determine whether contractual conditions precedent to arbitration had been met. *See Moresi v. Nationwide Mutual*, 96 Or App 61, 64, 771 P2d 301 (1989), *rev'd on other grounds*, 309 Or 619, 789 P2d 667 (1990) ("[c]onditions that the parties agreed on about access to the arbitral forum" are matters for the court). According to defendant, the court therefore had authority to determine, and should determine, that plaintiff's failure to meet those conditions precedent foreclosed arbitration. In addition, defendant argued that, by bringing suit, plaintiff waived any right to demand arbitration that it might otherwise have had.

---

[1] When the parties entered into their contracts, the 1999 version of the Oregon Arbitration Act, ORS 36.000 to 36.365, was in effect. When the action began, the 2001 version was in effect. In 2003, the OAA was repealed. Or Laws 2003, ch 598, § 57. Neither the amendments nor the repeal affects the outcome of this appeal.

The trial court concluded that plaintiff had not waived its right to demand arbitration. The court nonetheless denied that demand, reasoning that, under the contracts, the Oregon Arbitration Act, ORS 36.300 to 36.365 (2001) (OAA), applied to all aspects of the arbitration issue. Under that act, whether plaintiff met statutory or contractual conditions precedent was a decision for the court. *Moresi*, 96 Or App at 64. The court then determined that plaintiff had *not* met the prerequisites, based on three conclusions: First, plaintiff had not performed the contractual condition precedent of submitting claims to the project engineer; second, plaintiff had not complied with ORS 701.065(1), under which a contractor that does not have a CCB license may not commence an arbitration; and third, plaintiff was not "aggrieved" under ORS 36.310 because it did not make the necessary demand for arbitration.

Having successfully defeated plaintiff's demand for abatement and arbitration, defendant moved for summary judgment on the basis that plaintiff was barred from suing due to its failure to acquire a CCB license as a joint venture, a prerequisite to litigation under ORS 701.065(1).[2] Rejecting plaintiff's argument that it fell within an exception to the statute, the trial court granted defendant's motion and dismissed plaintiff's claims.

On appeal, the parties renew the arguments they made below. Plaintiff contends that the trial court erred in refusing to compel arbitration and that, even if the conclusion was not error and the court was the proper adjudicator, its adjudication was substantively wrong because disputed issues of material fact exist as to whether plaintiff qualified

---

[2] The trial court relied on ORS 701.065(1) both in denying plaintiff's petition to compel arbitration and, in the ensuing litigation, in granting defendant's motion for summary judgment. The dual application derives from the fact that the statute provides that, with exceptions discussed below,

"a contractor may not perfect a claim of a construction lien * * * *in arbitration or in any court* of this state for compensation for the performance of any work or for the breach of any contract for work that is subject to this chapter, unless the contractor has a valid license issued by the board[.]"

(Emphasis added.) Thus, the statute establishes a prerequisite for entering into arbitration as well as litigation; the trial court denied the petition to compel arbitration because, among other reasons, plaintiff had no CCB license, and it granted defendant's summary judgment for the same reason.

for an exemption from the CCB license requirement set forth in ORS 701.065(2). Based on our conclusion that the FAA applies, we agree with plaintiff that the trial court erred in refusing to abate litigation and compel arbitration. The trial court also necessarily erred in considering the merits of defendant's summary judgment motion, which are also matters for the arbitrator. We therefore reverse and remand.

Because it is dispositive, we begin with the arbitrability question, or, more precisely, with the question whether the trial court should have compelled arbitration. That question, in turn, involves subquestions: First, whether the arbitration clause in the parties' contracts covers the kind of dispute this case involves, that is, a dispute over whether defendant owes plaintiff money under a contract or *quantum meruit* theory; and second, if the contract does refer such disputes to arbitration, whether arbitration is also the proper forum for determining the preliminary questions of whether plaintiff has carried out the contractually imposed prerequisite of taking the dispute to the project engineer and whether plaintiff has met the statutorily imposed prerequisites of obtaining a CCB license or proving an exemption.

The subquestions, again in turn, are logically subsequent to a preliminary question: Does state or federal law apply? That question is preliminary because the answer conditions how we approach all of the questions involving arbitrability. As explained below, we conclude that the FAA applies. Under that statute, the *court* decides whether the underlying dispute ("Does defendant owe plaintiff $2.6 million?") is within the scope of the parties' arbitration clause, but it does so with a presumption in favor of arbitrability. Further, under federal law, the *arbitrator* decides issues involving whether plaintiff met contractual and statutory prerequisites to arbitration.

■■ The arbitrability of the parties' contract is governed by the FAA; that statute applies in "any suit or proceeding * * * in any of the courts of the United States." 9 USC § 3; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 US 1, 20, 103 S Ct 927, 74 L Ed 2d 765 (1983) ("any of the courts of the United States" in FAA includes state courts). By a choice of law provision, however, parties may choose to

limit application of the FAA. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 US 468, 472, 109 S Ct 1248, 103 L Ed 2d 488 (1989). The "Disputes and Arbitration" section of the parties' contracts contains a choice of law provision: "[T]he provisions of The Arbitration Act of Oregon, for the time being in force, shall apply to any arbitration hearings." We understand that, by "the Arbitration Act of Oregon," the parties refer to ORS 36.300 to 36.365 (1999), which was in effect at the time the contracts were signed. *See Harold Schnitzer Properties v. Tradewell Group*, 104 Or App 19, 21, 799 P2d 180 (1990), *rev den*, 311 Or 150 (1991) (referring to ORS "36.300 *et seq*" as "Oregon's Arbitration Act"). The parties vigorously dispute the provision's scope. Plaintiff argues that it applies only to rules governing the conduct of the hearing itself, for example the selection, compensation, and authority of arbitrators. Defendant contends that it covers all matters having to do with arbitration, including whether or not the parties have met the statutory and contractual prerequisites to arbitration, that is, whether they have legal access to the arbitral forum. The trial court agreed with defendant. We do not.

In its letter opinion denying plaintiff's motion to stay arbitration, the trial court recited a truncated excerpt of the choice of law provision, excluding the final word of that sentence. The court wrote, "The Arbitration Act of Oregon * * * shall apply to any arbitration." The contract states, "The Arbitration Act of Oregon * * * shall apply to any arbitration *hearings*." (Emphasis added.) Reasoning that the contract "could have said that federal law would apply to a portion of the arbitration process but it does not," the court determined that "[a] common sense reading of the language of the contract term" indicated that the OAA should govern all aspects of the arbitration, including questions involving prerequisites. And under the OAA, the court concluded, the court and not the arbitrator decides those issues.

We review the trial court's interpretation of the contract for errors of law, employing the procedure set forth in *Yogman v. Parrott*, 325 Or 358, 937 P2d 1019 (1997). We first examine the text and context of the contract as a whole in order to determine whether the choice of law provision is ambiguous. *Id.* at 361. If the provision is clear, our analysis

ends, but if there is ambiguity we discern the parties' intent aided by evidence external to the contract and, if necessary, we employ appropriate maxims of construction. *Id.* at 362-63.

■     The provision is not ambiguous. It appears as the last of five subparagraphs introduced by the following clause: "[With certain named exceptions,] all disputes between the Owner and the Contractor * * * shall be resolved by arbitration in accordance with the following *procedures*." (Emphasis added.) The first four subparagraphs provide a detailed explanation of the process for selecting an arbitrator. The choice of law provision, then, is one of the "arbitration * * * procedures." More importantly, the sequence of the provisions alerts the reader to the fact that the parties' choice of law is relevant only upon selection of an arbitrator, at the "hearing" over which the arbitrator is to preside. The contract, then, clearly indicates that the parties intended the OAA to govern the conduct of the hearing; nothing indicates an intention to choose Oregon law to govern resolution of the legal issues involved in determining whether a hearing should occur. Indeed, the OAA itself contains no operative provisions that would affect those issues; it deals, rather, with whether the contract containing an arbitration clause was validly made, with time lines, abatement, appointment and compensation of arbitrators, their subpoena power, judicial review, and so forth. ORS 36.300 - 36.365. The court therefore erred in determining that the parties' choice of law provision extended to the resolution of prearbitration issues.[3]

That being the case, the arbitrability of the parties' contract is governed by the FAA; that statute, as noted, applies in "any suit or proceeding * * * in any of the courts of the United States," 9 USC § 3, including state courts.[4] Importantly, however, it applies only to suits or proceedings brought "upon any issue referable to arbitration under an

---

[3] Even if the choice of law provision were ambiguous, we would reach the same conclusion. We lack external evidence of the parties' intent, and, at the third step of analysis under *Yogman*, we would construe any ambiguity in the contract against the drafting party, defendant. *Hill v. Qwest*, 178 Or App 137, 143, 35 P3d 1051 (2001).

[4] The statute applies only to contracts that implicate interstate commerce. It is undisputed that the contracts at issue in this case qualify.

agreement in writing for such arbitration," and whether an issue is referable to arbitration is a decision for the court:

> "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the *court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement,* shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement * * *."

9 USC § 3 (emphasis added).

Thus, we apply federal law to determine whether the issue is referable to arbitration—the so-called "substantive arbitrability" issue, that is, whether the dispute at issue is of the type that the parties contracted to arbitrate—and, under that law, the issue is for the court to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 US 79, 83-85, 123 S Ct 588, 154 L Ed 2d 491 (2002). In doing so, the court should apply those aspects of substantive state contract law governing "the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 US 483, 492 n 9, 107 S Ct 2520, 96 L Ed 2d 426 (1987). The application of state contract law, however, does not extend to a state's principles of contract interpretation, at least insofar as those principles would conflict with federal principles. That is so because contract interpretation is not a matter of "validity, revocability, [or] enforceability," *id.*, and, in the absence of specific instructions to the contrary, we are bound by United States Supreme Court cases construing federal statutes. *See Shaw v. PACC Health Plan, Inc.*, 322 Or 392, 400-01, 908 P2d 308 (1995) (court uses federal methodology and United States Supreme Court case law to construe ERISA provision). Those cases instruct us that, in interpreting the scope of an arbitration provision, the parties' "intentions are generously construed as to issues of arbitrability" and ambiguities are resolved in favor of substantive arbitrability. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 US 614, 626, 105 S Ct 3346, 87 L Ed 2d 444 (1985). If a plaintiff's

claims "touch matters" that are covered by the relevant arbitration agreements, the claims must be arbitrated, irrespective of how the allegations are labeled. *Id.* at 625 n 13.

Under those principles, we conclude that the trial court erred in refusing to abate and to compel arbitration. The contracts each contain two general arbitrability provisions framing a list of discrete exclusions. The first provision sets out in broad terms the types of disputes that are arbitrable:

> "GC 35.1   Differences between the parties to the Contract as to the interpretation, application, or administration of this Contract or any failure to agree where agreement between the parties is called for (herein collectively called the 'Dispute') which are not satisfactorily resolved in the first instance by a decision of the Engineer * * * shall be settled in accordance with the provisions of this General Condition."

Thus, the initial clause establishes a broad range of arbitrable disputes. Within the same general condition, certain limited exceptions qualify the general provision:

> "Except for disputes between the Owner and the Contractor relating to:
>
> "35.5.1.   The obligations of the Contractor pursuant to GC 17—Royalties and Patents, GC 34—Indemnity, GC 10—Protection of Property, and GC 41—Owner's Interest in Materials and Warranty of Title; or
>
> "35.5.2.   What constitutes an event of 'Force Majeure' pursuant to GC 27.2; or
>
> "35.5.3.   What constitutes an event of default entitling the Owner to stop work or terminate the Contract pursuant to GC 26—Owner's Right to Terminate Contract; or
>
> "35.5.4.   The rights and liabilities of either the Owner or the Contractor pursuant to GC 33—Insurance; or
>
> "35.5.5.   The Owner's right to apply to the courts for an injunction, mandamus order to order for specific performance; or
>
> "35.5.6.   The damages to which either the Owner or the Contractor may be entitled at law on account of a breach of the Contract by the other of them[.]"

After listing those exceptions, the contract again reiterates the arbitrability of other disputes between the parties, using inclusive terms, before providing instructions on how the "arbitration procedure" is to be conducted:

> "[A]ll disputes between the Owner and the Contractor which are not settled satisfactorily either by the Engineer or by the agreement of the Owner and the Contractor shall be resolved by arbitration in accordance with the following procedures."

Reading that provision in context, we understand the term "disputes" in this last sentence to mirror the "Dispute" defined at the beginning of GC 35 and discussed above. In other words, the residual provision refers back to the expansive, introductory arbitration provision, and both are limited substantively by the six exceptions. The only reasonable meaning that a reader could draw from the arbitrability provision is that all differences concerning the interpretation of the contract, conferral of benefits under the contract, and practical application of the contract terms, as well as unsettled differences remaining after attempts to resolve them short of arbitration, are arbitrable unless any of the six enumerated exceptions applies.

The claims frame precisely the kind of issue that falls within the scope of the general provisions: an unresolved dispute over the application or administration of the contract and failure to agree where agreement between the parties is called for. The issues framed by plaintiff's complaint sound in breach of contract and *quantum meruit*. The breach of contract claim alleges that plaintiff, having "performed all conditions and conditions precedent it is required to perform under" the contract, "incurred additional costs and expenses because of [specified] contract breaches and violations of implied and express warranties," resulting in plaintiff's entitlement to an "equitable adjustment to the contract prices in an amount not less than" $2.6 million. The *quantum meruit* claim simply incorporates by reference the breach of contract claim and adds an additional specification alleging that defendant would be unjustly enriched by $2.6 million "were it permitted to retain the goods and services provided to it by" plaintiff without payment. Because the issue is within the

general scope of the arbitration provision, the only issue is whether the dispute falls within an exception.

■ Defendant urges us to read the exceptions expansively, in particular GC 35.5.6 establishing the nonarbitrability of disputes relating to "[t]he damages to which either the Owner or the Contractor may be entitled at law on account of a breach of the Contract by the other of them[.]" According to defendant, because "damages" are closely related to "breach," we should consider both to be outside the scope of the arbitration clause. That reading, however, clashes with the text and context of the exception and with the interpretative strategy that the United States Supreme Court requires us to deploy. The text does not conflate breach and damages; the phrase "on account of a breach" simply describes the type of damages that, when disputed, need not be arbitrated. Contract clauses that establish different avenues of dispute resolution for breach and damages are neither uncommon nor unenforceable. *See Russell v. World Famous, Inc.*, 94 Or App 748, 751, 767 P2d 456 (1989) (enforcing contract that required arbitration of damages but not liability). Reading the exclusion to include issues of breach as well as of damages, then, would require us to insert what has been omitted. It would also require us not only to ignore the mandate to construe contracts expansively in favor of arbitration, *Mitsubishi Motors Corp.*, 473 US at 627, but to stand the mandate on its head. We therefore conclude that the clause exempting damages issues from mandatory arbitration does not exempt anything else. The parties' dispute as presented in the pleadings falls within the scope of the contractual arbitration clause. No exception applies.

■ Defendant, however, argues that, even if the substantive issue at the core of the parties' dispute falls within the scope of the arbitration clause, nonetheless the court did not err in denying the motion to compel arbitration because the dispositive issue here is not whether defendant breached the contract but whether plaintiff met the conditions precedent to arbitration. According to defendant, the court correctly denied the motion to compel arbitration because, under *Moresi,* 96 Or App at 64, conditions precedent to arbitration are for the court, not the arbitrator, to decide. Again, we disagree. *Moresi* was decided under state law and did not

involve application of the FAA. As discussed above, the FAA applies to all aspects of the present case except the conduct of the hearing, and under that statute as construed by the United States Supreme Court, the arbitrator and not the court decides whether the parties have met the contractual and statutory preconditions to arbitration. As the Court has explained:

> "[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide. * * * *John Wiley & Sons, Inc. v. Livingston*, 376 US 543, 546-547, 84 S Ct 909, 11 L Ed 2d 898 (1964) (holding that a court should decide whether an arbitration agreement survived a corporate merger and bound the resulting corporation). Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court. * * *

> "At the same time the Court has found the phrase 'question of arbitrability' not applicable in other kinds of general circumstance where parties would likely expect that an arbitrator would decide the gateway matter. Thus ' "procedural" questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide. *John Wiley*, [376 US 543] at 557 (holding that an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration). So, too, the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.' *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, [460 US 1,] 24-25, 103 S Ct 927, 74 L Ed 2d 765 (1983). Indeed, the Revised Uniform Arbitration Act of 2000 (RUAA), seeking to 'incorporate the holdings of the vast majority of state courts and the law that has developed under the [FAA],' states that an 'arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled.' RUAA § 6(c), and comment 2, 7 U.L.A. 12-13 (Supp. 2002). And the comments add that 'in the absence of an agreement to the contrary, issues of substantive arbitrability ... are for a court to decide and issues of procedural arbitrability, i.e., whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent

to an obligation to arbitrate have been met, are for the arbitrators to decide.' *Id.*, § 6, comment 2, 7 U.L.A., at 13 (emphasis added)."

*Howsam*, 537 US at 83-85 (some citations omitted); *accord PacifiCare Health Systems, Inc. v. Book*, 538 US 401, 406-07, 123 S Ct 1531, 155 L Ed 2d 578 (2003). Whether plaintiff adequately met the contractual condition precedent of submitting disputes to the project engineer and the statutory condition precedent of establishing an exemption from the CCB license requirement are questions that "grow out of the dispute" and "bear on its final disposition." They are clearly "prerequisites to arbitration" and "defense[s] to arbitrability"; so too is the issue whether, by its conduct, plaintiff waived arbitrability. *Howsam*, 537 US at 85.

To summarize: The FAA governs the arbitrability of this dispute. Under that statute, the court decides whether the parties' contractual arbitration provision covers the subject of the dispute. Here, the subject is whether defendant owes plaintiff $2.6 million for work plaintiff performed on defendant's Halsey mill. That subject is within the scope of the arbitration provision, which covers "interpretation, application, or administration" of the contract or "any failure to agree where agreement between the parties is called for." Thus, the dispute is arbitrable. Further, under the FAA, the arbitrator, not the court, should decide whether plaintiff has met preconditions to arbitrability. Thus, the trial court erred in denying plaintiff's petition to compel arbitration.

Reversed and remanded.