Argued and submitted February 11, 2009, reversed and remanded with instructions to grant defendants' petition for arbitration March 3, 2010

Joseph S. LIVINGSTON,
*Plaintiff-Respondent,*

*v.*

METROPOLITAN PEDIATRICS, LLC;
Heather M. Moore, M.D.;
Dean A. Moshofsky, M.D.;
Karen H. Lickteig, M.D.;
Gwynneth G. Neace, D.O.;
Richard Barsotti, M.D.;
Gale A. Rydell, M.D.;
Catherine Thomas, PNP;
Karen Heichelheim;
Mary Kay Brady;
and Nicole Huyck,
aka Nichole Powers,
*Defendants-Appellants.*

Multnomah County Circuit Court
060100470; A134765

227 P3d 796

138-b

John Dudrey argued the cause for appellants. With him on the briefs were Michael D. Williams and Williams Frederickson, LLC.

Mark G. McDougal argued the cause for respondent. With him on the brief was Gregory Kafoury.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

**ORTEGA, J.**

Plaintiff brought common-law claims against defendants for wrongful discharge, breach of contract, intentional infliction of emotional distress, and intentional interference with economic relations, and brought statutory claims of employment discrimination, ORS 659A.230 (whistleblowing),[1] and blacklisting, ORS 659.805.[2] This is an interlocutory appeal of an order denying defendants' motion to abate plaintiff's claims and compel arbitration pursuant to an arbitration clause in plaintiff's employment agreement. ORS 36.730(1)(a). The trial court ruled that the arbitration clause

---

[1] ORS 659A.230 provides, in part:

"(1) It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported criminal activity by any person, has in good faith caused a complainant's information or complaint to be filed against any person, has in good faith cooperated with any law enforcement agency conducting a criminal investigation, has in good faith brought a civil proceeding against an employer or has testified in good faith at a civil proceeding or criminal trial.

"(2) For the purposes of this section, 'complainant's information' and 'complaint' have the meanings given those terms in ORS 131.005.

"(3) The remedies provided by this chapter are in addition to any common law remedy or other remedy that may be available to an employee for the conduct constituting a violation of this section."

ORS 659A.885 provides that a person aggrieved by violation of ORS 659A.230 may file a civil action in circuit court.

[2] "Blacklisting" is a criminal offense. ORS 659.805 provides:

"(1) No corporation, company or individual shall blacklist or publish, or cause to be blacklisted or published, any employee, mechanic or laborer discharged by such corporation, company or individual, with intent and for the purpose of preventing such employee, mechanic or laborer from engaging in or securing similar or other employment from any other corporation, company or individual.

"(2) No officer or agent of any corporation or any other person shall, in any manner, conspire or contrive by correspondence or otherwise to prevent an employee discharged by such corporation or such person from securing employment."

A conviction under ORS 659.805 is punishable pursuant to ORS 659.990(2) by fine or imprisonment or both:

"Violation of ORS 659.805 by any officer or agent of a corporation or any other person is punishable, upon conviction, by a fine of not less than $50 nor more than $250, or by imprisonment in the county jail not less than 30 nor more than 90 days, or both."

We note that no statute authorizes a civil action for a violation of ORS 659.805.

is unenforceable because it is unconscionable. On appeal, defendants contend that the trial court's ruling was in error, and we agree. We also reject the other grounds for avoiding the arbitration clause that plaintiff asserts as alternative bases for affirming the trial court's ruling. Accordingly, we reverse and remand.

For purposes of the issues raised on appeal, we draw the underlying facts from plaintiff's complaint and take his allegations as true. Plaintiff is a pediatrician, with masters' degrees in computer science and public health. Defendant Metropolitan Pediatrics, LLC (MP), owns four pediatric clinics in the Portland metropolitan area. The individual named defendants are doctor members and employees of MP. After completing clinical training, plaintiff moved to Oregon to work for MP as a pediatrician on physician-partner track, at an annual salary of $105,000 plus benefits.

A few months after plaintiff arrived, as a result of a routine inspection of MP's facilities by the "Vaccines for Children" program, MP learned that there was a problem with its storage of vaccines, with the possible result that some of those that it had administered were ineffective. Vaccines for Children advised MP to investigate and to take appropriate corrective action, including determining the need for revaccination. Initially, MP decided not to inform patients of the problem. It later decided to offer free revaccination to patients who had been vaccinated within the last eight months. Plaintiff expressed strong and persistent disagreement with MP's investigation and with the individual defendants concerning the handling of the risks of having administered ineffective vaccines. When MP did not address plaintiff's concerns to his satisfaction, plaintiff expressed his intention to notify his own patients, but MP prohibited him from doing so. He also contacted government authorities and learned that defendants had submitted falsified documents concerning its revaccination program. MP later extended its revaccination program to patients who had received certain vaccines within two years of the discovery of the storage problem.

Despite positive feedback from his patients concerning his performance as a physician, MP admonished plaintiff

for his conduct relating to the vaccines, and MP and the individual defendants began a pattern of abuse and discrimination. MP eventually terminated plaintiff's employment in retaliation for his conduct relating to revaccination. Defendants also made defamatory and untrue statements about him to several potential employers.

Plaintiff filed a complaint with the Oregon Bureau of Labor and Industries (BOLI). Defendant MP participated in the BOLI proceedings by responding to the complaint but did not seek to compel or enforce arbitration. Thereafter, BOLI investigated plaintiff's complaint, and plaintiff participated in discovery. The BOLI proceeding culminated in the issuance of a "right to sue" letter.

Plaintiff later filed the complaint in this proceeding, alleging that defendants' conduct constituted wrongful discharge, breach of contract, intentional infliction of emotional distress, and intentional interference with economic relations, and that it violated statutes prohibiting employment discrimination, and blacklisting. Plaintiff sought damages, injunctive relief, penalties, and attorney fees.

Plaintiff's employment agreement contained an arbitration clause that required arbitration of "[a]ny controversy, dispute or disagreement arising out of or relating to this Agreement, or the breach thereof[.]" Defendants filed a petition to compel arbitration of plaintiff's claims pursuant to ORS 36.625(1).[3] Plaintiff raised a number of challenges to the enforceability of the arbitration clause, contending that (1) by participating in proceedings before BOLI, defendants are estopped from asserting or waived the right to assert that the claims are subject to arbitration; (2) claims against the individual, nonsignatory defendants are not subject to arbitration; and (3) several provisions of the arbitration clause render it unconscionable.

---

[3] ORS 36.625 provides, in part:

"(1) On petition of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement:

"* * * * *

"(b) If the refusing party opposes the petition, the court shall proceed summarily to decide the issue * * * and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate."

The trial court rejected defendants' petition to arbitrate, accepting plaintiff's arguments about unconscionability. In a letter opinion, the court stated:

"My conclusion is that several features of the subject arbitration provisions render the agreement to arbitrate unenforceable as a matter of law. These features include 1) a fee shifting provision imposing attorney fees and costs on plaintiff should he not prevail on his blacklisting claim, 2) imposition of excessive arbitration fees on plaintiff, 3) ambiguity about what AAA Rules would apply (Commercial or Employment) to this controversy, and 4) a confidentiality requirement which also raises serious public policy concerns.

"Under these circumstances, the Court need not determine whether each separate feature of the agreement renders the arbitration provisions unenforceable. Rather, the above features, in combination, render the arbitration provisions unenforceable. The Court concludes that the arbitration agreement is void as against public policy."

In this interlocutory appeal, defendants challenge the bases for the trial court's ruling. They also contend that plaintiff's other grounds asserted in the trial court in avoidance of the arbitration clause are without merit. We agree with defendants that the arbitration clause is enforceable and therefore reverse and remand.

The parties agree that the case is subject to the Uniform Arbitration Act (UAA), ORS 36.600 to 36.740. ORS 36.620 provides, in part:

"(1) An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.

"(2) Subject to ORS 36.625(8), the court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate.

"(3) An arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled."

Because they are potentially dispositive, we first address each of plaintiff's alternative grounds for affirmance

that were raised and argued below but not addressed by the trial court. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 660, 20 P3d 180 (2001). Those grounds are (1) that defendants are estopped from or have waived enforcement of the arbitration clause; (2) that the right to compel arbitration, if any, did not survive the termination of plaintiff's employment; (3) that plaintiff's claims asserting intentional torts are not subject to arbitration; (4) that plaintiff's statutory employment discrimination claim is not subject to arbitration; and (5) that his claims against the individual defendants are not subject to arbitration. We conclude that the first issue is for an arbitrator to decide, and reject each of plaintiff's other arguments in turn.

■ First, plaintiff contends that the trial court's order should be affirmed because, by their participation in the BOLI proceeding, defendants either are estopped from or have waived enforcement of the arbitration clause.[4] Defendants contend that both estoppel and waiver present "conditions precedent" to arbitrability that must be addressed by the arbitrator rather than the court, pursuant to ORS 36.620(3).

That section provides that "[a]n arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled." The statute, enacted in 2003, Or Laws 2003, ch 598, § 6, has never been construed. However, the Revised Uniform Arbitration Act (RUAA) on which Oregon's UAA

---

[4] In *Bennett v. Farmers Ins. Co.*, 332 Or 138, 156-57, 26 P3d 785 (2001), the Supreme Court briefly discussed the distinction between the doctrines of waiver and estoppel in the context of contract disputes. The court explained that waiver is the voluntary relinquishment of a known right. A party to a written contract may waive a provision of a contract by conduct or by oral representation. *Id.* The court explained that, in the absence of an intent to waive a provision, a party may nonetheless be estopped to rely on the provision, if the other party has relied on a perceived waiver:

"This court has described the doctrine of estoppel by comparing it to the doctrine of waiver. The two doctrines are closely related, and sometimes it is difficult to distinguish between the two. *Smith v. Martin*, 94 Or 132, 141, 185 P 236 (1919). If there is no evidence of an intent to waive a contract provision, a party nevertheless may be estopped from relying on that provision if that party led the other party to believe that the provision had been waived, and the other party relied on that perceived waiver. *Id.*; *see also Waterway Terminals Co* [*v. P.S. Lord*], 242 Or [1, 26-27,] 406 P2d 556 (1965)] (waiver not presumed if not intended unless other party was misled, to that party's prejudice, *into* honest belief that waiver was intended)."

332 Or at 157-58.

is based, contains an identical provision. RUAA § 6(c). Commentary to Section 6 of the RUAA states that, "in the absence of an agreement to the contrary, issues of * * * procedural arbitrability, *i.e.*, whether prerequisites such as time limits, notice, laches, estoppel, *and other conditions precedent to an obligation* to arbitrate have been met, are for the arbitrators to decide." *Id.* § 6 comment 2, 7 ULA 13 (Supp 2002) (emphasis added).

■ Interestingly, estoppel is more commonly regarded as a means of avoidance of contractual conditions or obligations, rather than what contract law customarily describes as a "condition precedent." *See, e.g., Day-Towne v. Progressive Halcyon Ins. Co.*, 214 Or App 372, 381-82, 164 P3d 1205 (2007) (addressing when estoppel may be invoked in the context of insurance); *Wright v. State Farm Mutual Automobile Ins. Co.*, 223 Or App 357, 370 n 14, 196 P3d 1000 (2008) ("A contractual condition 'is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.'" (quoting *Hill v. Oland*, 61 Or App 85, 90, 655 P2d 1088 (1982) (further citation and internal quotation marks omitted))); *see also* John Edward Murray Jr., *Murray on Contracts* 272 § 133 (2d Rev Ed 1974) ("In the law of contracts, the use of the word condition is usually confined to the designation of some fact or event, other than the mere lapse of time, which is not certain to occur but which must occur (unless excused) in order to activate a contractual duty."). Nonetheless, the RUAA commentary includes estoppel among the issues to be decided by the arbitrator in addressing "conditions precedent" to arbitrability. A commentary to a uniform act that is enacted by the Oregon legislature is a part of the act's legislative history. *State of Oregon DCS v. Anderson*, 189 Or App 162, 169, 74 P3d 1149, *rev den*, 336 Or 92 (2003). The RUAA commentary therefore provides guidance in our interpretation of ORS 36.620(3). Because the commentary unambiguously states that the issue of estoppel concerns a condition precedent to arbitrability, in the absence of a contractual provision providing otherwise,[5] we conclude that plaintiff's estoppel

---

[5] *See* ORS 36.610(1) ("[A] party to an agreement to arbitrate * * * may waive, or the parties may vary the effect of, the requirements of ORS 36.600 to 36.740 to the extent permitted by law.").

argument raises a question concerning a condition precedent to arbitrability that must be taken up with the arbitrator.

The RUAA does not stake out a distinct position as to whether waiver is also a "condition precedent" to be decided by the arbitrator, but the RUAA commentary notes that "[w]aiver is one area where courts, rather than arbitrators, often make the decision as to enforceability of an arbitration clause." RUAA § 6 comment 5, 7 ULA 16 (Supp 2005). Federal circuits are split on that question under the Federal Arbitratio Act (FAA). *See Marie v. Allied Home Mortgage Corp.*, 402 F3d 1, 12 (1st Cir 2005) (discussing cases).

However, in Oregon, waiver likewise has been treated as a condition precedent to arbitrability. In *Industra / Matrix Joint Venture v. Pope & Talbot*, 200 Or App 248, 260-61, 113 P3d 961 (2005), *aff'd*, 341 Or 321, 142 P3d 1044 (2006), we held that the defendant's waiver defense to arbitrability was a precondition to arbitrability that the arbitrator should decide. Although that case was decided under the FAA and not the UAA, our reasoning there—that a waiver of arbitrability, like estoppel, presents a condition precedent to arbitrability that grows out of the dispute and bears on its final disposition, 200 Or App at 261 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 US 79, 83-85, 123 S Ct 588, 154 L Ed 2d 491 (2002))—is persuasive. Plaintiff's waiver argument, like estoppel, is a procedural rather than a substantive defense to arbitrability that grows out of the controversy itself, *see* RUAA § 6 comment 2, and we conclude for that reason that, under ORS 36.620(3), the issue of waiver of arbitrability involves a condition precedent to be decided by the arbitrator, rather than the court. Accordingly, we do not address it.[6]

---

[6] We note that, when courts have addressed the question of waiver in the context of arbitration clauses, they have required the party opposing arbitration to show that he was prejudiced as a result of the alleged inconsistent conduct. *See, e.g., Fisher v. A.G. Becker Paribas Inc.*, 791 F2d 691, 694 (9th Cir 1986) (deciding question of waiver under FAA). The RUAA commentary also provides:

"[B]ecause of the public policy favoring arbitration, a court normally will only find a waiver of a right to arbitrate where a party claiming waiver meets the burden of proving that the waiver has caused prejudice."

RUAA § 6 comment 5. Plaintiff has made no such showing here.

It is undisputed that the remaining issues are for the court rather than the arbitrator. ORS 36.620(2) ("[T]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate."). In logical sequence, then, the next alternative ground for affirmance that we take up is plaintiff's contention that the right to compel arbitration did not survive the termination of plaintiff's employment. We turn first to the text of the arbitration clause:

> "Any controversy, dispute or disagreement arising out of or relating to this Agreement, or the breach thereof, shall be resolved by arbitration which shall be conducted in Multnomah County, Oregon, in accordance with the rules of the American Arbitration Association, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof."

Plaintiff notes that the employment agreement contains an additional provision relating to the effects of termination, which provides, in part:

> "Upon termination of this Agreement, as provided herein, neither party shall have any further obligations hereunder except for (a) obligations accruing prior to the date of termination; and (b) obligations, promises, or covenants contained herein that are expressly made to extend beyond the term of this Agreement."

In plaintiff's view, the agreement does not expressly extend the obligation to arbitrate beyond the time frame of the agreement, and it therefore ended when plaintiff was terminated.

■ In interpreting the provisions of the employment agreement and the arbitration clause, we apply ordinary principles of contract interpretation. *See Industra/Matrix Joint Venture v. Pope & Talbot*, 341 Or 321, 332, 142 P3d 1044 (2006). Thus, we determine whether the parties intended their arbitration agreement to include the present controversy by examining the text and context of the provision. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997). If the provision is unambiguous, then our analysis is complete, and we give the appropriate effect to the parties' intentions. *Id.* In the absence of an ambiguity, we construe

the words of the contract as a matter of law. *Eagle Industries, Inc. v. Thompson*, 321 Or 398, 405, 900 P2d 475 (1995).

■■ In addition to the ordinary rules of contract construction, special rules are applicable to the construction of arbitration agreements. Oregon, like the federal courts, recognizes a presumption in favor of arbitrability. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 US 574, 582, 80 S Ct 1347, 4 L Ed 2d 1409 (1960) (courts should resolve any doubts in favor of arbitration and should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"); *Snow Mountain Pine, Ltd. v. Tecton Laminates Corp.*, 126 Or App 523, 869 P2d 369, *rev den*, 319 Or 36 (1994) (same); *see also Black v. Arizala*, 182 Or App 16, 48 P3d 843 (2002), *aff'd*, 337 Or 250, 95 P3d 1109 (2004). Thus, our inquiry here is whether the arbitration clause is susceptible to an interpretation that covers the parties' dispute, *Snow Mountain Pine, Ltd.*, 126 Or App at 529, *i.e.*, whether the clause can *plausibly* be interpreted to require arbitration. In making that determination, we consider not only the arbitration clause itself, but the entire contract, as well as the relationship of the parties, the subject matter of the contract, and the practical construction the parties themselves may have placed on the contract by their acts. *Id.*

■ We reject for two reasons plaintiff's contention that the arbitration clause became inapplicable when plaintiff's employment terminated. First, the arbitration clause explicitly applies to "[a]ny controversy, dispute or disagreement arising out of or relating to this Agreement, or the breach thereof." That expansive language encompasses *any* controversy, dispute, or disagreement, as long as the subject matter of the dispute arises out of or relates to the employment agreement. In light of the strong policy favoring the enforceability of arbitration clauses, we conclude that the text of the clause plausibly encompasses controversies or disputes that are pursued after the termination of employment, including disputes over termination. Secondly, many of plaintiff's claims are based on allegations of misconduct occurring during the term of the contract and therefore plausibly fall within the termination provision's exception for "obligations

accruing prior to the date of termination." We therefore reject plaintiff's contention that the right to seek arbitration terminated with plaintiff's employment.

■ Plaintiff next contends that the claims asserting intentional torts, including whistleblowing, blacklisting, intentional interference with economic relations, and intentional infliction of emotional distress, are not subject to arbitration, because the arbitration clause does not explicitly mention those torts, and the parties therefore cannot have "intended to waive their right to seek full legal redress for intentional harm to one by the other." Plaintiff's contention is again defeated by the broad language of the arbitration clause, which applies to "[a]ny controversy, dispute or disagreement arising out of or relating to this agreement." In light of the scope of the provision and Oregon's rule favoring arbitrability, *Snow Mountain Pine, Ltd.*, 126 Or App at 529, we conclude that the claims are plausibly within the scope of the arbitration clause and are therefore subject to arbitration.

With regard to plaintiff's blacklisting claim under ORS 659.805, we likewise reject plaintiff's contention that, in providing statutory relief for blacklisting, the legislature necessarily intended that only the judicial remedy is adequate for vindication of statutory rights. In the absence of an express statutory limitation on arbitration, we know of no reason why parties should not be free to agree to arbitration of statutory claims. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 US 20, 28, 111 S Ct 1647, 114 L Ed 2d 26 (1991) (" '[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function.' " (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 US 614, 637, 105 S Ct 3346, 87 L Ed 2d 444 (1985) (brackets in original)).

■ In a slight variation on the above argument, plaintiff contends that his statutory employment discrimination claim, ORS 659A.230, is not subject to arbitration, because the claim is inherently outside the employment agreement, and requiring arbitration would defeat the strong public policy of encouraging employees to come forward and report

employment abuses. However, as pleaded, the discrimination claim alleged facts that occurred during or arising out of plaintiff's employment. For that reason, we conclude that the discrimination claim also plausibly falls within the scope of the arbitration clause.

■ Plaintiff next contends that the claims against the individual defendants are not subject to arbitration, because those individuals were not parties to the employment agreement. In plaintiff's view, the arbitration clause, which applies to claims "arising out of or relating to" the employment agreement, cannot be enforced by individual defendants who are not parties to plaintiff's agreement with MP.

■ Generally, a third party's right to enforce a contractual promise in its favor depends on the intentions of the parties to the contract. *Sisters of St. Joseph v. Russell*, 318 Or 370, 374, 867 P2d 1377 (1994). Courts have relied on a number of rationales for permitting nonsignatory defendants to invoke arbitration clauses in claims against them by signatories to a contract.[7] Once again, the terms of the arbitration clause are at the center of the inquiry, because it is the text of the arbitration clause that will determine whether the parties to the agreement intended that third parties could enforce its provisions. We conclude, as explained below, that the arbitration clause is broad enough to plausibly

---

[7] *See, e.g., Westmoreland v. Sadoux*, 299 F3d 462, 466-67 (5th Cir 2002) ("There are two circumstances under which a nonsignatory can compel arbitration. First, when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. Second, when the signatory to the contract containing a arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."); *Roby v. Corporation of Lloyd's*, 996 F2d 1353, 1360 (2d Cir 1993), *cert den*, 510 US 945 (1993) (nonsignatories to an arbitration agreement may benefit from the agreement where the legal basis and factual context for claims against nonsignatories are the same as claims against the signatories, where nonsignatories are employees, disclosed agents, or principal of signatory); *Arnold v. Arnold Corp.*, 920 F2d 1269, 1281 (6th Cir 1990) (if agents could not invoke their principals' arbitration provisions, a party easily could avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as defendants in his complaint or signatory parties in their individual capacities only, thereby effectively nullifying an arbitration agreement); *Letizia v. Prudential Bache Sec., Inc.*, 802 F2d 1185, 1187-88 (9th Cir 1986) (holding that nonsignatory employees of the signatory could invoke the arbitration clause because the employees' alleged wrongdoing related to their employment).

encompass plaintiff's claims against the individual defendants and to afford them the same right to request arbitration as MP.

The arbitration clause provides that it applies to controversies arising out of or relating to the employment agreement. That broad statement does not expressly limit its scope to claims between the parties to the employment agreement. Plaintiff nevertheless contends that, because the clause applies to disputes *arising out of or relating to the agreement*, its application is necessarily limited to claims *under the agreement*—that is, between the parties to the agreement—and does not extend to claims arising generally out of plaintiff's employment. The difficulty with plaintiff's position is that the plain text of the clause—in particular, the "arising out of or relating to" language—does not limit its scope to controversies *under* the agreement or between plaintiff and MP. Furthermore, the employment agreement provides the basis for and terms of plaintiff's employment. The text of the arbitration clause is reasonably susceptible to the interpretation that the parties intended it to apply to *any* claim that plaintiff might have *arising out of or relating to his employment pursuant to the agreement.*

We conclude that the wording of the clause is also broad enough to encompass claims against nonsignatories and to support the interpretation that the parties intended that MP's employees and agents could avail themselves of its terms. Furthermore, the claims against the individual nonsignatory defendants (intentional interference with economic relations, intentional infliction of emotional distress, and blacklisting) depend on the same allegations made against MP and have as their source the identical circumstances of plaintiff's claims against MP—defendants' concerted response to plaintiff's conduct relating to the vaccine storage problem.[8] We conclude, especially in light of the public policy

---

[8] As plaintiff points out, the interference with economic relations claim is asserted only against the individual defendants. The complaint shows, however, that that claim, like the others, is based on the same misconduct alleged against MP. Although plaintiff disputes whether the intentional interference with economic relations claim arises out of or relates to the employment contract by alleging that defendants' actions "were outside the scope of their employment," the facts as alleged plausibly arise out of plaintiff's employment. Accordingly, in light of the presumption in favor of arbitrability, any factual dispute about whether defendants' actions actually arose out of employment is for the arbitrator.

favoring arbitrability, *see Snow Mountain Pine, Ltd.*, 126 Or App at 529, that the arbitration clause plausibly encompasses not only claims between the parties to the agreement, but claims against the individual defendants that arise out of or relate to plaintiff's employment with MP.

 We now move on to the issue of unconscionability, on which the trial court based its decision and that the parties do not appear to dispute is to be decided by the court and not the arbitrator. *See Sprague v. Quality Restaurants Northwest, Inc.*, 213 Or App 521, 524, 162 P3d 331, *rev den*, 343 Or 223 (2007) (where the plaintiff's unconscionability challenge is to the arbitration clause alone and not to the entire employment contract, the issue is to be decided by the court and not the arbitrator); *Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or App 553, 562-63, 152 P3d 940 (2007) (same). Whether, under Oregon law, the facts support a determination of unconscionability is a question of law to be decided based on the facts in existence at the time the contract was made. *Best v. U. S. National Bank*, 303 Or 557, 560, 739 P2d 554 (1987). The party asserting unconscionability bears the burden of demonstrating that the provision in question is unconscionable. *W. L. May Co. v. Philco-Ford Corp.*, 273 Or 701, 707, 543 P2d 283 (1975).

 In Oregon, the test for unconscionability has both procedural and substantive components. *Vasquez-Lopez*, 210 Or App at 566. Procedural unconscionability refers to the conditions of contract formation and involves a focus on two factors: oppression and surprise. Oppression exists when there is inequality in bargaining power between the parties, resulting in no real opportunity to negotiate the terms of the contract and the absence of meaningful choice. *Id.* Surprise involves the question whether the allegedly unconscionable terms were hidden from the party seeking to avoid them. *Id.* at 567.

"Substantive unconscionability" generally refers to the terms of the contract, rather than the circumstances of formation, and the inquiry focuses on whether the substantive terms unfairly favor the party with greater bargaining power. *Id.* In *Carey v. Lincoln Loan Co.*, 203 Or App 399, 422-23, 125 P3d 814 (2005), *aff'd*, 342 Or 530, 157 P3d 775 (2007), we summarized Oregon's formulation of unconscionability

and the interplay of the procedural and substantive components:

> "The primary focus * * * appears to be relatively clear: Substantial disparity in bargaining power, combined with terms that are unreasonably favorable to the party with the greater power may result in a contract or contractual provision being unconscionable. Unconscionability may involve deception, compulsion, or lack of genuine consent, although usually not to the extent that would justify rescission under the principles applicable to that remedy. The substantive fairness of the challenged terms is always an essential issue."

As we said in *Carey*, quoting *Restatement (Second) of Contracts* § 208 comment a (1979), "[t]he determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose and effect." 203 Or App at 422. Such a determination depends on the actual facts in existence at the time of the contract's execution, and each case is decided on its own facts. *Vasquez-Lopez*, 210 Or App at 567. Oregon courts are "reluctant to declare contractual provisions *per se* unconscionable, even among parties of unequal bargaining power." *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or App 610, 623, 156 P3d 156 (2007); *see also The Hays Group, Inc. v. Biege*, 222 Or App 347, 351-55, 193 P3d 1028 (2008).

Plaintiff here makes no claim of procedural unconscionability. Although defendants are willing to assume that, as a general proposition, a prospective employer has greater bargaining power than an applicant for employment, in this case it is undisputed that plaintiff, who is highly educated, had an opportunity to review the employment agreement for two weeks, and he signed and returned it without making any changes. Thus, there is no contract of adhesion. *See Reeves v. Chem Industrial Co.*, 262 Or 95, 101, 495 P2d 729 (1972) (defining a contract of adhesion as a "take-it-or-leave-it" contract that is the product of unequal bargaining power). We conclude that, to the extent that the parties had disparate bargaining power, the inequality was minimal, and plaintiff voluntarily agreed to the arbitration clause. Our inquiry focuses on whether there are, in any event, one-sided or

unreasonably unfair terms in the arbitration clause that render it substantively unconscionable. *Vasquez-Lopez*, 210 Or App at 567.

As previously noted, the trial court explained that there were four aspects of the arbitration clause that collectively rendered it unconscionable: (1) a fee-shifting provision imposing attorney fees and costs on plaintiff should he not prevail on his blacklisting claim; (2) imposition of excessive arbitration fees on plaintiff; (3) ambiguity about which version of the American Arbitration Association rules would apply; and (4) a confidentiality requirement. Plaintiff asserts, additionally, as alternative grounds for affirming the trial court's ruling, that the clause unconscionably (1) shifts attorney fees and costs on the wrongful discharge and statutory employment discrimination claims; (2) adopts the American Arbitration Association rules; and (3) thereby requires the parties to waive all claims against the arbitrator.

Ordinarily, we would review the trial court's findings underlying a determination of unconscionability for any evidence. *See Vasquez-Lopez*, 210 Or App at 566. Here, however, the trial court made no findings pertaining to unconscionability and decided the issue as a matter of law based only on the contractual provisions themselves. In reaching its decision, the court did not consider how or whether the provisions were unconscionable in light of plaintiff's individual circumstances. For example, the court did not consider whether the fee-shifting provision would be unfair to or cause a hardship to plaintiff. The court likewise did not consider whether the arbitration fees as applied to plaintiff would make it difficult for him to pursue his claims. The court determined, in essence, that the arbitration clause was unconscionable *per se*. There are no facts in the record—outside of the arbitration clause itself and the rules of the American Arbitration Association—concerning the effect of the allegedly unconscionable terms on plaintiff. We thus address plaintiff's arguments of *per se* unconscionability to determine whether any of the disputed provisions are inherently unreasonably unfair to plaintiff.

We begin with plaintiff's contentions regarding fee shifting. Although not part of the arbitration clause,

Paragraph 5.6 of the agreement provides for an award of attorney fees to the prevailing party in any arbitration arising out of the agreement. The paragraph provides, in its entirety:

> "In the event of any breach of this Agreement, the non-breaching party shall be entitled to recover its reasonable costs and attorney fees incurred in connection with enforcing the Agreement. *In any arbitration arising out of this Agreement, the prevailing party shall be entitled to recover its expenses, costs, and excerpt [sic] attorney fees, including expenses, costs, and fees on any appeal or petition for review.*"

(Emphasis added.) Both parties treat the emphasized portion of that paragraph, described by plaintiff as a "fee-shifting" provision, as a part of the arbitration agreement. We agree that, in light of the fact that the contract requires that all disputes be resolved through arbitration, the attorney fee provision necessarily should be construed *in pari materia* with the arbitration provision. It allows the prevailing party in an arbitration to recover attorney fees, even if the claims at issue would not otherwise provide a basis for a fee award. In plaintiff's view, in light of the remedial and public policy purposes of ORS 659.805[9] and ORS 659A.230, and the common-law tort of wrongful discharge, that consequence is unconscionable, because it creates a chilling effect that inhibits a plaintiff from pursuing legitimate claims. *See Vasquez-Lopez,* 210 Or App at 573 (an arbitration agreement is unenforceable under the FAA if it denies a litigant the opportunity to vindicate his or her rights in the arbitral forum).

We assume, for the sake of discussion only, that the fee-shifting provision contained in the agreement would, in fact, allow defendants to recover fees on plaintiff's claims where fees would not otherwise be available to defendants. And it may well be, as plaintiff asserts, that the costs of arbitration to plaintiff could far exceed those of a jury trial in state court. However, as we have previously noted, whether the facts support a determination of unconscionability is a question of law to be decided based on the facts in existence at the time the contract was made. *Best,* 303 Or at 560. The

---

[9] We do not consider in this opinion whether plaintiff is, in fact, entitled to pursue a civil remedy for his blacklisting claim.

party asserting unconscionability bears the burden of demonstrating that the provision in question is, in fact, unconscionable. *W. L. May Co.*, 273 Or at 707. As we held in *Motsinger*, we will not determine in a vacuum whether costs imposed on a plaintiff create an unreasonably unfair burden. 211 Or App at 618; *see also Vasquez-Lopez*, 210 Or App at 574 (uncontradicted evidence that the cost of arbitration would be six months' savings established that the clause was unconscionable); *cf. Torrance v. Aames Funding Corporation*, 242 F Supp 2d 862, 874 (D Or 2002) (an arbitration agreement that requires the plaintiff to pay *any* arbitrator's fee to vindicate statutory rights is unconscionable).

Here, there is no record from which we may determine whether the fee-shifting provision will deter or unreasonably burden plaintiff's ability to pursue his common-law and statutory claims. As in *Motsinger*, any conclusion that the fee-shifting provision would have a detrimental effect on plaintiff's ability to pursue his claims would be purely speculative. 211 Or App at 618. Accordingly, in the absence of evidence that the fee-shifting provision, in fact, results in the arbitration forum not providing a reasonable alternative forum for this plaintiff, we conclude that the fee-shifting provision is not substantively unconscionable.[10]

We similarly reject plaintiff's contention that the filing fees associated with American Arbitration Association arbitrations render the arbitration clause unconscionable. The agreement requires that the arbitration be "conducted * * * in accordance with the rules of the American Arbitration Association." The agreement does not state that the arbitration must be *administered* by the American Arbitration Association, nor does it specify whether the American Arbitration Association's commercial or employment rules apply. The parties disagree about whether and to what extent, when an arbitration is not to be administered by the American Arbitration Association, its *fees* are applicable at all. In all events, however, as with the fee-shifting provision,

---

[10] We note that plaintiff offered the affidavit of an employment law attorney, who stated that he has never encountered a client who would be willing to face the risk of paying defense counsel's attorney fees if the client were to proceed on a statutory claim and lose. The affidavit does not provide evidence as to the effect of fee-shifting on *plaintiff's* ability to pursue *his* claim.

in the absence of evidence that the fees would have a chilling effect on plaintiff's ability to pursue his claims, any conclusion that the fee is unconscionable would be speculative.

As noted, the employment agreement does not specify whether the American Arbitration Association's employment or commercial arbitration rules apply, and the trial court cited that as a factor in its determination that the arbitration provision is unconscionable. However, we do not find an ambiguity, at least not one sufficient to contribute to a determination that the agreement is unconscionable. The American Arbitration Association's rules provide that the employment rules apply when (1) the particular arbitration rules are not specified and (2) there is an employment dispute. Accordingly, the employment arbitration rules, rather than the commercial arbitration rules, would appear to be applicable, and plaintiff does not seriously contend otherwise. We conclude that the trial court erred in relying on that ambiguity as a factor in its determination that the arbitration clause is unconscionable.

■ Although the arbitration clause does not itself contain a confidentiality provision, the American Arbitration Association's employment arbitration rules provide that the arbitrator "shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the parties agree otherwise or the law provides to the contrary." The trial court listed the confidentiality of the proceedings among factors supporting its determination that the arbitration clause is unconscionable. We do not find a basis for concern here.

In *Vasquez-Lopez*, we discussed, in general, problems with confidentiality provisions and their tendency to favor "repeat players," who gain information regarding preferences of arbitrators, the relative force of particular arguments, and the existence of rulings, and thereby acquire an advantage against those who are cut off from the same body of information. 210 Or App at 575-76. Plaintiff does not raise those concerns here, but rather contends that his statutory claims seek to vindicate the public interest and that it is unconscionable for that reason to require that the claims remain confidential. Defendants respond that plaintiff's

claims have been filed in circuit court and thus already are a matter of public record; additionally, the substance of any award would become a matter of public record on the filing of a petition for confirmation under ORS 36.700 or a petition to vacate the award under ORS 36.705. Assuming, without deciding, that a confidentiality requirement might be a basis for invalidating an arbitration clause in some other agreement, in this employment agreement, we conclude that it is not. There are reasons why either party to an employment agreement might desire to keep proceedings confidential. In this case, we conclude the confidentiality provision is even-handed and equally benefits and burdens both sides to the employment agreement. *See Vasquez-Lopez*, 210 Or App at 575. Accordingly, we conclude that the American Arbitration Association's confidentiality rules do not support a determination of unconscionability here.

Finally, plaintiff failed to raise in the trial court, and we decline to address, his contention that the American Arbitration Association's authority to rely on a different rule version than the one in effect at the time of the agreement renders the arbitration clause unconscionable. We reject without further discussion plaintiff's remaining contentions that the arbitration clause's incorporation of the American Arbitration Association rules of arbitration, without setting them forth verbatim, renders the arbitration clause unconscionable *per se*, and that the American Arbitration Association rules themselves are unconscionable because they hold the arbitrator harmless from liability when acting in that capacity. *See* ORS 36.660 (describing immunity of arbitrators). In summary, we conclude that plaintiff has failed to establish that provisions of the arbitration clause, considered separately or in combination, are unreasonably favorable to defendants so as to render the clause substantively unconscionable.

Having rejected each of plaintiff's challenges to the enforceability of the arbitration clause, we conclude that the case must be remanded for arbitration of plaintiff's claims.[11]

---

[11] In light of our disposition, we need not address defendants' contention that any unconscionable provisions of the employment contract are severable.

Reversed and remanded with instructions to grant defendants' petition for arbitration.