Argued and submitted March 14, reversed and remanded June 27, petition for review denied October 4, 2007 (343 Or 223)

Roseanna SPRAGUE,
individually and on behalf of
all others similarly situated,
*Plaintiff-Respondent,*

*v.*

QUALITY RESTAURANTS NORTHWEST, INC.,
an Oregon corporation,
dba Chili's Grill & Bar,
*Defendant-Appellant.*

Multnomah County Circuit Court
050504650; A131182

162 P3d 331

John A. Schwimmer argued the cause for appellant. With him on the briefs were Jeff D. Brecht and Sussman Shank LLP.

Jacqueline L. Koch argued the cause for respondent. With her on the brief were Koch & Deering, and J. Dana Pinney and Bailey, Pinney & Associates.

Before Landau, Presiding Judge, and Schuman* and Ortega, Judges.

SCHUMAN, J.

---

* Schuman, J., *vice* Brewer, C. J.

## SCHUMAN, J.

Plaintiff brought this putative class action against defendant, the owner of the restaurant where she once worked, alleging violations of Oregon's wage and hour statutes. Defendant filed a motion to compel arbitration pursuant to an arbitration clause in the parties' employment agreement. In response, plaintiff argued that the arbitration clause was unconscionable and therefore unenforceable. The trial court agreed with plaintiff and issued an order denying defendant's motion to compel arbitration. Defendant appeals. ORS 36.730(1)(a) (permitting appeal from order denying motion to compel arbitration). We hold that the arbitration clause is not unconscionable. We therefore reverse and remand.

The allegations underlying this case concern two paychecks that plaintiff received after ending her employment at a restaurant owned by defendant.[1] She claims that she received the first, for approximately $247, seven days after she was terminated, and the second, for $20.64, approximately one month later. The second check was returned for insufficient funds. According to plaintiff, these facts amounted to violations of ORS 652.110 (checks issued by employers must be negotiable), ORS 652.120 (wages must be paid within 35 days of last regular payday), ORS 652.140 (wages must be paid within one business day of discharge or termination by mutual agreement), and ORS 653.025 (establishing minimum wage). Plaintiff filed a class action against defendant on behalf of herself and all of defendant's other similarly situated current and past employees.

Defendant disputed plaintiff's factual allegations and moved to compel arbitration, relying on a mandatory arbitration clause in the employee manual and a signed acknowledgment from plaintiff that she had read the manual.

---

[1] According to defendant, plaintiff was actually employed by a different entity, Employee Advantages, LLC. However, the trial court ruled that the named defendant, Quality Restaurants Northwest, Inc., could properly seek to enforce the arbitration agreement because it was a third-party beneficiary of the employment contract. That issue is not before us. Our references to "defendant" as the employer do not imply that we decide it.

The acknowledgment also restates the following terms of the agreement:

> *"By my signature below, I acknowledge that I have received and read (or had the opportunity to read) the Employee Advantages, LLC Dispute Resolution Program and Mutual Agreement to Arbitrate. I understand that the Alternative Dispute Resolution requires all employment-related disputes involving my legally protected rights to be submitted to a mediator and (if necessary) an arbitrator, rather than a judge and jury in court. In anticipation of gaining the benefits of a fair and efficient method for resolving such disputes, I agree to all of the terms of and to use the procedure described in this Policy for the resolution of all covered claims. I also agree that any award made by an arbitrator will be binding on both Employee Advantages, LLC and me and my representatives, parents, guardians, assigns, beneficiaries, spouse, children and heirs."*

(Italics in original.) The employee manual contained a similar arbitration agreement, stating, in part, *"The claims shall be settled exclusively by binding arbitration in accordance with the Employment Dispute Resolution Rules of the American Arbitration Association."* (Italics in original.) Neither agreement contained any provisions permitting or prohibiting class actions. Both required that arbitration be commenced within two years. Plaintiff raised numerous arguments in opposition to defendant's motion to compel arbitration, but the court relied on only one in denying defendant's motion: that the arbitration agreements are unconscionable and therefore unenforceable. Unconscionability, then, is the sole issue before us in this interlocutory appeal.

■■    Although the arbitration clause is governed by the Federal Arbitration Act (FAA), 9 USC sections 1 to 16, we apply Oregon law to determine whether it is unconscionable. 9 USC § 2; *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or App 610, 613-14, 156 P3d 156 (2007). Further, because plaintiff's unconscionability challenge is to the arbitration clause alone and not to the entire employment contract, the issue is to be decided by the court and not the arbitrator. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 US 440, 126 S Ct 1204, 163 L Ed 2d 1038 (2006); *Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or App 553, 563, 152 P3d 940 (2007).

■■   Under Oregon law, unconscionability is determined based on the facts as they existed at the time the contract was formed. *Best v. U. S. National Bank*, 303 Or 557, 560, 739 P2d 554 (1987). Plaintiff, as the party asserting unconscionability, bears the burden of demonstrating that the arbitration clause is unconscionable. *W. L. May Co. v. Philco-Ford Corp.*, 273 Or 701, 707, 543 P2d 283 (1975). We have recently summarized the Oregon law regarding unconscionability as follows:

> "Unconscionability in Oregon, as elsewhere, has both a procedural and a substantive component. Procedural unconscionability generally refers to the conditions of contract formation and
>
>> " 'focuses on two factors: oppression and surprise. Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the terms.'
>
> "Substantive unconscionability generally refers to the terms of the contract as opposed to the circumstances of formation and 'focuses on the one-sided nature of the substantive terms.' In some jurisdictions, unconscionability requires both components. In others, the courts may invalidate a contract or a contract term on either procedural or substantive grounds. Oregon has not adopted a formal template. Rather, this court has described the analysis as follows:
>
>> " 'The primary focus * * * appears to be relatively clear: substantial disparity in bargaining power, combined with terms that are unreasonably favorable to the party with the greater power may result in a contract or contractual provision being unconscionable. Unconscionability may involve deception, compulsion, or lack of genuine consent, although usually not to the extent that would justify rescission under the principles applicable to that remedy. The substantive fairness of the challenged terms is always an essential issue.'
>
> "*Carey* [*v. Lincoln Loan Co.*, 203 Or App 399, 422-23, 125 P3d 814 (2005), *aff'd*, 342 Or 530, 157 P3d 775 (2007)]. Thus, both procedural and substantive unconscionability

are relevant, although only substantive unconscionability is absolutely necessary. With that proviso, each case is decided on its own unique facts."

*Vasquez-Lopez*, 210 Or App at 566-67 (some citations omitted).

■ ■ The arbitration agreement at issue here is not entirely free from procedural unfairness. It is part of a classic contract of adhesion, that is, an agreement between parties of unequal bargaining power, offered to the weaker party on a "take-it-or-leave-it" basis. *Reeves v. Chem Industrial Co.*, 262 Or 95, 101, 495 P2d 729 (1972). Thus, the circumstances of contract formation were somewhat oppressive. However, under Oregon law, the fact that a contract is adhesive does not alone render it unenforceable. *Best*, 303 Or at 560-61. Further, there is no evidence of any other oppressive circumstances, nor was the agreement brought about by deception, as was the arbitration clause in *Vasquez-Lopez*. 210 Or App at 568. Rather, it is clearly and fully described in the employee handbook, with the key provisions set off in italics and boldface; the acknowledgment form as well sets off the agreement in italics. The language is not technical and the typeface is large. We therefore conclude that, procedurally, the agreement was no more unconscionable than the typical employment, consumer, or service contracts that are a common feature of contemporary commercial life and that Oregonians sign (and Oregon courts enforce) as a matter of course.

Plaintiff cites two substantive features of the arbitration agreement in support of her argument that it is unenforceable: its two-year limitation period and its silence with respect to class actions.

The wage claims that plaintiff alleges would, in court, have three- and six-year statutes of limitation. ORS 12.080 (action on liability created by statute must be commenced within six years); ORS 12.100(2) (action on statute for penalty must be commenced within three years). Defendant contends that the shorter period in the arbitration agreement is irrelevant in the present case because plaintiff

filed her complaint within two years. We reject that argument, because, as noted above, unconscionability is determined based on the facts as they existed at the time the contract was formed. *Best*, 303 Or at 560. Inescapably, the shorter period in the arbitration agreement imposes a burden on plaintiff that is not shared by defendant. That burden, however, is not unalloyed; although the shorter period can impose hardship on those who would bring claims, it also provides them with an incentive to do so while the disputed events are fresh in the memories of witnesses and parties. Perhaps recognizing that fact, the trial court's decision did not mention the two-year limitation period and plaintiff does not develop an argument on that issue on appeal.

■       The trial court was troubled mainly by the fact that the agreement was silent with respect to the availability of class action arbitrations; the court's colloquy with counsel for the parties clearly establishes that it found the arbitration agreement unconscionable because the availability of class relief under the agreement would be decided by the arbitrator, and the arbitrator *might* have decided that such relief was not available:

> "THE COURT:   If the arbitrator says, 'No, this arbitration agreement does not permit class actions,' that's the end of the matter and the plaintiff's stuck with no class action; is that correct? Is that your position?
>
> "[DEFENSE COUNSEL]:   Yes.
>
> "THE COURT:   Well, that's unconscionable."

The court went on to explain that the possibility that the arbitrator might find class relief to be unavailable would, in essence, deprive many employees with relatively small wage claims of their day in court:

> "THE COURT:   In the context of wage claims in particular, * * * denying class action where the individual claim amounts may be insufficient to warrant private Attorney General intervention, meaning insufficient to make it economically feasible for private attorneys to take each and every case to arbitration and expect to get an attorney fee award sufficient to justify the result, it is, in my view, inadequate to provide for arbitration without also ensuring

class relief if the grounds for class relief and the bases are present."

The court's reasoning, however, was based on an erroneous interpretation of the FAA as that statute was construed by the Supreme Court in *Green Tree Financial Corp. v. Bazzle*, 539 US 444, 451-52, 123 S Ct 2402, 156 L Ed 2d 414 (2003). Defendant argued, and the court agreed, that, under *Bazzle*, when an arbitration agreement under the FAA is silent with respect to class relief, the question of whether class relief is nonetheless available is in most circumstances one of contract interpretation to be decided by the arbitrator and not the court. *Bazzle*, however, did not deal with unconscionability; the issue before the Court was whether the FAA preempted state law on the same subject, and the inquiry regarding the availability of class relief in arbitration was merely incidental. *Bazzle*, 539 US at 447. Further, *Bazzle* created an exception; the court, not the arbitrator, decides arbitration-related matters involved in "certain gateway matters, such as whether the parties have a valid arbitration agreement at all." *Id.* at 452.

The more relevant cases are *Prima Paint v. Flood & Conklin*, 388 US 395, 87 S Ct 1801, 18 L Ed 2d 1270 (1967), and *Buckeye Check Cashing, Inc.*, 546 US 440. Those cases, as noted above, hold that when a plaintiff levels an unconscionability challenge to an arbitration agreement in a contract, as opposed to challenging the entire contract for unconscionability, the determination of unconscionability is for the court. *See Vasquez-Lopez*, 210 Or App at 563 (describing holdings in *Prima Paint* and *Buckeye Check Cashing, Inc.*). Where, as here, the question whether an arbitration agreement permits class action is one aspect of the larger question whether the arbitration agreement is unconscionable, both questions are for the court. Any other reading of the cases would lead to the logically absurd rule that the court cannot decide whether an arbitration agreement is unconscionable (and therefore could not decide whether to send the case to an arbitrator) until an arbitrator had decided whether the agreement permitted class actions.

■ Thus, under the FAA properly construed, the court and not the arbitrator should have decided whether the

employment contract between plaintiff and employer permits a class action. Further, we note that the arbitration agreement provides,

> "The claims shall be settled exclusively by binding arbitration in accordance with the Employment Dispute Rules of the American Arbitration Association."

Those rules, in turn, provide,

> "[T]he American Arbitration Association will administer demands for class arbitration pursuant to its Supplementary Rules for Class Arbitrations if (1) the underlying agreement specifies that disputes arising out of the parties' agreement shall be resolved by arbitration in accordance with any of the Association's rules, and (2) the agreement is silent with respect to class claims, consolidation or joinder of claims."

American Arbitration Association, *American Arbitration Policy on Class Actions* (2005), http://www.adr.org/Class-arbitrationpolicy. We therefore conclude that the trial court could have reached only one legally correct conclusion: because the arbitration agreement invoked the rules of the AAA and was silent with respect to class claims, the arbitrator would have decided that class claims were permitted. That being the case, the arbitration agreement itself permitted class claims. That conclusion, in turn, leads us to hold that, despite the fact that the arbitration agreement was in a contract of adhesion and imposed a slightly reduced statute of limitations, the trial court erred in finding the agreement to be unconscionable.

Reversed and remanded.