Argued and submitted May 18, 2011, affirmed September 12, 2012

Stan HATKOFF,
*Plaintiff-Appellant,*

*v.*

PORTLAND ADVENTIST MEDICAL CENTER,
a domestic non-profit entity,
dba Adventist Medical Center,
*Defendant-Respondent.*

Multnomah County Circuit Court
090404600; A143162

287 P3d 1113

Eric J. Fjelstad argued the cause for appellant. With him on the briefs was Smith & Fjelstad.

Dennis Steinman argued the cause for respondent. With him on the brief was Kell, Alterman & Runstein, LLP.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

HASELTON, C. J.

### HASELTON, C. J.

In this employment age discrimination action, ORS 659A.030, plaintiff appeals from a general judgment of dismissal, ORCP 21 A, that was predicated on plaintiff's failure to follow the alternative dispute resolution procedure prescribed in his employee handbook. Plaintiff contends that the prescribed grievance and arbitration procedure is unenforceable for three reasons: (1) the procedure in the employee handbook was "not presented explicitly enough to constitute a knowing and voluntary waiver of statutory rights"; (2) defendant waived its right to assert plaintiff's failure to utilize the procedure as a defense; and (3) the procedure is unconscionable. For reasons explained below, we conclude that the prescribed grievance and arbitration procedure is not unconscionable either substantively or procedurally, and we reject plaintiff's waiver arguments. Accordingly, we affirm.

The facts material to our review are undisputed. Plaintiff worked for defendant from November 2000 until defendant terminated plaintiff's employment on July 7, 2008. At that time, plaintiff, who had worked in sales and marketing for most of his professional life, was 65 years old. Plaintiff questioned the sincerity of defendant's explanation that he had been laid off for financial reasons, because defendant had recently hired a younger woman to fulfill some of the job duties that plaintiff had performed. In response to plaintiff's inquiry, defendant's vice president sent him a letter reiterating, and further explaining, the reasons for his termination. The vice president denied any discriminatory motive and closed her letter as follows:

> "In the event that you disagree with my decision, I have enclosed a copy of the 'Grievance and Arbitration Procedure' from the Employee Handbook. Please contact [the human resources director] if you have remaining questions."

As we describe more precisely below, in general under the grievance and arbitration procedure set out in the employee handbook, an employee with an employment-related dispute must submit a written grievance to his or her immediate supervisor, which commences an informal

grievance process with three levels of internal "appeal." If that grievance process fails to resolve the matter to the employee's satisfaction, he or she is entitled to initiate arbitration for certain types of disputes—including disputes regarding employment discrimination and termination. Here, plaintiff did not contact the human resources director; nor did he submit a written grievance in accordance with the procedure. Instead, in September 2008, he filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and, on April 2, 2009, filed this age discrimination action under ORS 659A.030.[1]

Defendant moved to dismiss the action under ORCP 21 A, arguing that plaintiff was precluded from raising his employment-related claim in court because he had failed to follow the internal grievance and arbitration procedure. Defendant alternatively moved the court to abate the action and refer it to arbitration. Plaintiff opposed the motion to dismiss and the alternative motion to abate, arguing that the grievance process is unenforceable because (a) the grievance process is unconscionable; (b) the mandatory internal dispute resolution procedure was not "explicitly presented" to plaintiff and, thus, he did not "knowingly and voluntarily" waive his right to pursue his claim in court; (c) his agreement lacked consideration; and (d) defendant had waived the application of the grievance and arbitration procedure "by not pressing the issue" after plaintiff had filed a charge with the EEOC. The court granted defendant's motion to dismiss and entered a general judgment dismissing the complaint with prejudice, thereby implicitly rejecting all of plaintiff's arguments regarding the enforceability of the procedure.[2] Plaintiff appeals from the general judgment of dismissal, raising essentially the same arguments regarding waiver and unconscionability.

---

[1] The EEOC process terminated on February 20, 2009, when the EEOC issued plaintiff a notice of right to sue, which pertained only to plaintiff's right to file federal discrimination claims. There is no suggestion in this record that plaintiff ever subsequently pursued any claim under federal law.

[2] The trial court's order stated that it dismissed the claim "with prejudice for failure to exhaust contractual remedies and lack of subject matter jurisdiction[.]"

Because it is the predicate for the trial court's order of dismissal—and the object of plaintiff's challenge—we begin with a detailed description of the internal grievance and arbitration process, as well as the documents describing and prescribing that process and plaintiff's conduct in relation to those documents. When plaintiff started working for defendant in 2000, defendant provided him with an employee handbook, and plaintiff signed an acknowledgement recognizing his receipt of the handbook and his responsibility to read and understand its contents. Additionally, plaintiff agreed that,

> "[i]n the event that I am dissatisfied or disagree with any action taken by [defendant], I agree to submit the matter to the hospital's Grievance and Arbitration Procedures for final and binding resolution."[3]

Defendant updated its employee handbook in 2003 and again in 2006. As pertinent here, defendant most recently signed an acknowledgement in 2006, which provides, in part:

> "I acknowledge that I have received a copy of [defendant's] Employee Handbook. I further acknowledge and agree that my employment is governed by the Handbook and the policies contained therein. I understand that this Handbook supersedes and replaces any inconsistent Policies and all prior handbooks."

Thus, unlike the 2000 acknowledgement, the 2006 acknowledgement did not explicitly reference the grievance and arbitration procedure.

The 2006 employee handbook stated that employees

> "should initiate the Grievance and Arbitration Procedure ('Procedure') for any event, action, failure to act, condition, rule, or practice arising out of or relating to your employment which you believe to be improper or in conflict with your civil rights ('grievance'). This Procedure covers the full range of employment disputes, including those

---

[3] The portions of the 2000 handbook describing the contemporaneous grievance and arbitration procedure are not in this record. We do not understand plaintiff to suggest or contend that those procedures varied materially from those extant in 2006, which we describe immediately below.

based on state and federal civil rights laws, other state and federal statutes, torts, public policies, and those involving terminations."

The prescribed procedure for resolving employee complaints and claims consists of two *seriatim* components: (a) the grievance process and (b) with respect to certain specified matters that either party elects to pursue beyond the final level of the grievance process, the arbitration process. The handbook precisely delineates those types of matters that are subject to arbitration upon demand following timely and complete pursuit of the grievance process:

> "Arbitrable disputes are those disputes that * * * [a]rose out of or are related to a claim of (i) employment discrimination (including, but not limited to, discriminatory retaliation, discriminatory or sexual harassment), (ii) termination of employment, including claims of constructive discharge, or (iii) any other claim(s) (whether brought by or on behalf of one or more employees) for wages or other compensation with an actual aggregate value of $75,000 or more."

Generally, to initiate that integrated procedure, an employee "must submit a written grievance and [employee's] requested solution * * * within 90 calendar days of the event giving rise to the grievance." However, the arbitration process provides for an alternative deadline for initiation of the grievance process for matters that are, ultimately, subject to arbitration:

> "[I]f the applicable statute of limitations provides a longer period of time in which to initiate a claim, the grievance will be considered timely if [the aggrieved party] initiate[s] the Procedure within the period of time allowed by the statute of limitations."

The grievance process provides for four successive stages of internal process before reaching arbitration, with the internal decision-makers at each stage being, respectively: (1) the aggrieved employee's immediate supervisor; (2) the department head; (3) an "administrative officer" in concurrence with the human resources department (HR); and finally (4) defendant's president or his or her designee. At each stage of the grievance process, the decision-maker

is required to provide the aggrieved employee with a written response "[w]ithin 14 calendar days, or as soon thereafter as practicable." If the employee is dissatisfied with that result, the employee must renew the grievance and "advance" to the next level within 14 days. The handbook provides that, with respect to the fourth and final level of the grievance process, "[t]he decision of the President or designee is final, except to the extent that a grievance is arbitrable." Significantly, the failure of the employee to timely initiate or, as applicable, timely "advance" the grievance from one step to the next "shall result in the waiver of [employee's] right to pursue the underlying issue in court or arbitration."

If an employee is dissatisfied with the final result of the grievance process with respect to a matter that is arbitrable, the employee must initiate arbitration by giving defendant written notice of the intent to arbitrate "within the longer of the applicable statute of limitations or 60 calendar days of the mailing of the President's written decision." The handbook states that "arbitration shall be the exclusive remedy for resolving any such arbitrable disputes" and that the arbitrator's decision "shall be final and binding on all parties." The rights of the parties in arbitration "are the same as those available * * * in a court of competent jurisdiction." Failure to timely initiate arbitration "shall constitute a waiver of the dispute in any forum."

The processes just described pertain to employee-initiated grievances. With respect to defendant employer's claims against an employee, the processes, while similar, differ in some respects. Defendant "must, within the longer of 90 calendar days or the period of time allowed by the applicable statute of limitations, notify the employee in writing of the claim and the requested solution." The employee is then required to arrange, through HR, a meeting with defendant's representative. If that meeting does not lead to resolution, or if the employee fails to respond, defendant may initiate arbitration by giving the employee written notice of the intent to arbitrate within the longer of 60 calendar days or the applicable statute of limitation. Defendant's failure "to pursue a grievance in

a timely fashion shall result in the waiver of its right to pursue the underlying issue in court or arbitration."

Against that factual backdrop, we address plaintiff's contention that the grievance and arbitration procedure is unenforceable because it is unconscionable. Before describing and applying pertinent principles of unconscionability, it is essential to identify the object to which that analysis properly refers. In particular, although plaintiff directs his unconscionability challenge to certain aspects of the grievance process individually and collectively, defendant remonstrates that that approach is impermissibly selective and skewed. Rather, defendant asserts, the grievance process and the arbitration process are merely two components of an integrated procedure for addressing and resolving those employment-related claims that are, ultimately, subject to arbitration upon demand— and, thus, any unconscionability must be assessed with respect to that procedure *in toto*.

In the circumstances of this case, we agree with defendant for either of two interrelated reasons on which we will elaborate below. First, as noted, the grievance process is the first of two components in a unified procedure, affording a variety of points at which a dispute can be resolved to the parties' satisfaction, and nothing in that process impermissibly impairs an employee's ability and entitlement to invoke arbitration, if necessary, to vindicate statutorily protected rights. Second, to the extent that, as plaintiff (correctly) asserts, various features of the grievance process are not commensurate with those afforded in a civil trial, the procedures and relief available in the arbitration process are much more complete and substantial. Because the latter is ultimately available upon demand to an employee who has pursued the grievance process but is unsatisfied with its final resolution, the focus of the unconscionability analysis is, properly, on the alternative dispute resolution process as an integrated whole.

As the party asserting unconscionability, plaintiff bears the burden of demonstrating that the grievance and arbitration procedure is unconscionable. *W. L. May Co. v. Philco-Ford Corp.*, 273 Or 701, 707, 543 P2d 283 (1975).

Plaintiff's burden of persuasion is hardly ameliorated by the substantive rigor that we have historically employed in reviewing claims of unconscionability:

> "[T]he doctrine of unconscionability does not relieve parties from all unfavorable terms that result from the parties' respective bargaining positions; it relieves them from terms that are *unreasonably* favorable to the party with greater bargaining power. Oregon courts have been reluctant to disturb agreements between parties on the basis of unconscionability, even when those parties do not come to the bargaining table with equal power. In those rare instances in which our courts have declared contractual provisions unconscionable, there existed serious procedural and substantive unfairness."

*Motsinger v. Lithia Rose-FT, Inc.*, 211 Or App 610, 626-27, 156 P3d 156 (2007) (internal quotation marks, footnote, and citations omitted; emphasis in original); *see also The Hays Group, Inc. v. Biege*, 222 Or App 347, 351-52, 193 P3d 1028 (2008) (same).

We most recently summarized the test for unconscionability as follows:

> "In Oregon, the test for unconscionability has both procedural and substantive components. Procedural unconscionability refers to the conditions of contract formation and involves a focus on two factors: oppression and surprise. Oppression exists when there is inequality in bargaining power between the parties, resulting in no real opportunity to negotiate the terms of the contract and the absence of meaningful choice. Surprise involves the question whether the allegedly unconscionable terms were hidden from the party seeking to avoid them.

> "'Substantive unconscionability' generally refers to the terms of the contract, rather than the circumstances of formation, and the inquiry focuses on whether the substantive terms unfairly favor the party with greater bargaining power."

*Livingston v. Metropolitan Pediatrics, LLC*, 234 Or App 137, 151, 227 P3d 796 (2010) (citations omitted); *see also Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or App 553, 566-67, 152 P3d 940 (2007).

Our case law has not fully explained the interplay between the two identified unconscionability "components." In *Carey v. Lincoln Loan Co.*, 203 Or App 399, 423, 125 P3d 814 (2005), *aff'd*, 342 Or 530, 157 P3d 775 (2007), we observed that "[t]he substantive fairness of the challenged terms *is always an* **essential** *issue*." (Emphasis and boldface added.) Later, in *Vasquez-Lopez*, we explained that "both procedural and substantive unconscionability are relevant, although *only substantive unconscionability is absolutely necessary*. With that proviso, each case is decided on its own unique facts." 210 Or App at 567 (emphasis added).

It is clear that, if a challenged provision is substantively unconscionable, it is unenforceable—regardless of whether it is procedurally unconscionable. Conversely, a contractual provision that is neither substantively nor procedurally unconscionable is enforceable. Our case law has not clarified the proper result when a court determines that the challenged provision is procedurally unconscionable but substantively fair. *See Vasquez-Lopez*, 210 Or App at 567 (noting that, "[i]n some jurisdictions, unconscionability requires both components" and that, in other jurisdictions, "courts may invalidate a contract or a contract term on either procedural or substantive grounds" but that Oregon "has not adopted a formal template"); *accord Sprague v. Quality Restaurants Northwest, Inc.*, 213 Or App 521, 526-29, 162 P3d 331, *rev den*, 343 Or 223 (2007) (upholding an arbitration agreement that was "not entirely free from procedural unfairness" but was substantively fair). However, we need not resolve that question in this case, because we ultimately conclude that the grievance and arbitration procedure is neither substantively nor procedurally unconscionable.

We begin our analysis with the "essential issue," *Carey*, 203 Or App at 423: whether the grievance and arbitration procedure is substantively unconscionable. Plaintiff argues that the procedure is substantively unconscionable for three reasons: (1) the procedure does not allow plaintiff to effectively vindicate his statutory rights because the grievance process component "involves no discovery, no real hearing, no witnesses, no impartial

decision maker * * *, no lawyers * * * and unclear remedies;" (2) the grievance process "is entirely one sided in favor of the defendant" because it "applies only to employees and does not bind defendant" (*i.e.*, lack of mutuality); and (3) the 90-day period in which to initiate a grievance "effectively severely shortens all employment claim statutes of limitation to 90 days."[4]

In response, defendant contends that the terms do not unfairly favor defendant. Defendant responds that the protections that plaintiff complains the grievance process lacks would have been available to him had he complied with the prescribed procedure by pursuing the grievance process to completion and, if then dissatisfied, invoking arbitration. Defendant also argues that parties are free to agree to limit rights and remedies and may contractually shorten the length of an otherwise applicable statute of limitations, so long as the contractual period is "reasonable." Defendant notes that the arbitration process allows for an extension of the contractual deadline to the time allowed by the applicable statute of limitation.[5]

We address each of plaintiff's contentions in turn. Plaintiff first emphasizes that the grievance process involves no discovery, no real hearing, no witnesses, no impartial decision-maker (because the only decision-makers are defendant's employees), no lawyers to help grievants with complex civil rights claims, no jury to hear his complaint, and "unclear" remedies. Plaintiff's challenge in that regard fails for two related reasons. First, as we explained, the proper referent for assessing unconscionability in this case is the entire alternative dispute resolution process, as prescribed by the handbook. Second, plaintiff does not contend that the arbitration process is similarly (or even materially) deficient with respect to procedural protections—nor could he credibly. As noted, under the terms of the handbook, the

---

[4] Plaintiff specifically references the one-year limitation to file an employment discrimination complaint with the Bureau of Labor and Industries, ORS 659A.820, or in state court, ORS 659A.875.

[5] Defendant also contends, in the alternative, that, even if the prescribed procedure limited an employee to 90 days to initiate a grievance based on conduct purportedly violating ORS 659A.030, that limitation would still afford sufficient time so as not to be unreasonable.

rights of the parties in arbitration "are the same as those available * * * in a court of competent jurisdiction." *See* 252 Or App at 215; *accord* ORS 36.665(1) ("An arbitrator may conduct an arbitration in such manner as the arbitrator considers appropriate for a fair and expeditious disposition of the proceeding."). To be sure, as plaintiff points out, there is no right to a jury trial under the grievance and arbitration procedure, but that feature is hardly unconscionable— or, more precisely, if it were, virtually every system of alternative dispute resolution would be substantively unconscionable.[6] *Accord The Hays Group, Inc.*, 222 Or App at 351 (observing that "[c]laims cannot be settled by 'final' and 'binding' arbitration except by a waiver of the right to a jury trial" and upholding an arbitration agreement despite the lack of explicit waiver of the right to a jury trial).

Plaintiff next contends that the grievance process is impermissibly one-sided because only the employee, and not the defendant employer, is required to pursue the grievance process. *Motsinger* is instructive in that regard. There, we held that an arbitration clause that required an employee to submit claims to arbitration, while not similarly requiring the employer to submit claims against an employee to arbitration, lacked mutuality but was not substantively unconscionable. 211 Or App at 619, 627. In so holding, we emphasized that the proper focus is on the "one-sided *effect* of an arbitration clause—rather than its one-sided *application*." *Id.* at 623 (emphasis in original). Applying that principle, we concluded that the challenged arbitration clause was not totally one-sided in its effect because, under the clause, "plaintiff [was] entitled to all of the same remedies—and most of the same procedural protections— as defendant." *Id.* at 626. For example, the agreement did

---

[6] As to substantive protections, plaintiff asserts, vaguely, that the "internal process [is] devoid of numerous procedural and substantive protections available to plaintiff outside of the internal grievance procedure." He later argues that an enforceable arbitration procedure "must provide adequate process and other protections to allow an employee to develop and argue his or her case fully and have adequate remedies available if the employee prevails." Plaintiff characterizes the available remedies in the grievance process as inadequate and "mysterious"; however, plaintiff never explains precisely how or why the grievance and arbitration procedure as a whole fails to provide adequate remedies in comparison to those that would be available in court.

not limit the amount or type of recovery available to the plaintiff, nor did it impose limits on discovery or "tight deadlines" on the filing of claims. *Id.*

Plaintiff is correct that, under the alternative dispute resolution procedures at issue here, defendant is not required to follow the same grievance process as its employees. Specifically, as noted, 252 Or App at 215, defendant is only required to notify an employee of its claim and requested solution. The *employee* is then required to contact HR to set up a meeting with defendant's representative. If the employee fails to respond, or if the parties fail to resolve the issue at that meeting, defendant may then initiate arbitration. Thus, defendant is subject to only two steps of internal process before reaching arbitration, as compared to the four stages of the internal grievance process that plaintiff must negotiate before reaching arbitration. Moreover, the process that applies to defendant almost immediately shifts the burden to act onto the employee. Thus, the grievance process is, in fact, one-sided in *application*. Nevertheless, the *effect* of the grievance process is not impermissibly one-sided. That is so because, again, an employee does have ultimate access to the arbitration process which is completely mutual. Thus, any interim imbalance is ultimately subject to correction upon demand within the overall design of the alternative dispute resolution process.

Additionally, in characterizing the grievance process as an impermissible impediment to his ability to vindicate his statutory rights, plaintiff fails to acknowledge that the grievance and arbitration procedure also benefits employees. That is so because the informal process allows for potentially faster, easier, and cheaper resolution of employment-related disputes in comparison to litigation. The internal dispute resolution process provides an opportunity for an employee to resolve the issue to his or her satisfaction at any one of the four internal steps or in arbitration.

Finally, with respect to substantive unconscionability, plaintiff argues that the 90-day period in which an

employee must commence the grievance process is a burden that defendant does not share and that the contractual period "severely shortens all employment claim statutes of limitation to 90 days." In that regard, plaintiff refers particularly to the one-year statute of limitation for age discrimination claims pursuant to ORS 659A.875.

That argument fails for one of several reasons. First, the plain language of the 2006 alternative dispute resolution provisions belies plaintiff's "90-day limit" premise. As noted, 252 Or App at 214, the pertinent provision states, "[I]f the applicable statute of limitations provides a longer period of time in which to initiate a claim, the grievance will be considered timely if [the aggrieved party] initiate[s] the Procedure within the period of time allowed by the statute of limitations." Thus, for those claims (including plaintiff's claim for a purported violation of ORS 659A.030) for which there is a prescribed statute of limitation, the time for initiating a grievance is commensurate with the operative statute of limitation (here, one year).

Second, even if plaintiff were somehow contractually compelled to initiate a grievance regarding this matter within 90 days, parties are free to contractually limit the timeframe in which to bring a claim, and that limit will be enforced unless unreasonable. *Biomass One, L.P. v. S-P Construction (A61560)*, 103 Or App 521, 526 n 4, 799 P2d 152 (1990) ("'The parties to a contract may stipulate that an action for a breach of an agreement must be brought within a certain period, and, if such limitation is reasonable, it will be upheld[.]'" (quoting *Ausplund v. Aetna Indemnity Co.*, 47 Or 10, 22, 81 P 577 (1905))); *accord Thurman v. DaimlerChrysler, Inc.*, 397 F3d 352, 358 (6th Cir 2004) (holding that a six-month limitation in the plaintiff's employment application was "reasonable" and applicable to the employment discrimination action). To be sure, at some point a contractual deadline *could* be void as against public policy if it effectively deprives a party of the reasonable opportunity to vindicate his or her rights. *Cf. Motsinger*, 211 Or App at 624 (explaining that unconscionability "overlaps with rules which render particular bargains or terms unenforceable on grounds of public policy" (internal quotation marks omitted)). Here, however, plaintiff does

not so contend. Finally, as we observed in *Sprague*, a contractually shortened period for initiating a claim can both burden and benefit a potential plaintiff. 213 Or App at 527 ("[A]lthough the shorter period can impose hardship on those who would bring claims, it also provides them with an incentive to do so while the disputed events are fresh in the memories of witnesses and parties."). Thus, the contractual time limit for initiating the grievance process is not substantively unconscionable.

We thus conclude that the procedure is not substantively unconscionable.

Having determined that the terms of the agreement are not substantively unconscionable, we proceed to plaintiff's argument that the agreement is procedurally unconscionable. That issue, although not "essential," is nonetheless "relevant." *Vasquez-Lopez*, 210 Or App at 567. As noted, procedural unconscionability refers to the conditions of contract formation and focuses on oppression and surprise. *Livingston*, 234 Or App at 151. Plaintiff does not contend that his agreement was the product of oppression; rather, he argues that "the contractual terms at issue were hidden from [him], justifying a finding of surprise."

*Vasquez-Lopez* is instructive on the issue of surprise. 210 Or App 553. There, the plaintiffs did not read nor speak English and, thus, they could not read the arbitration rider in the loan contract at issue in that case. *Id.* at 556. The defendant had misled the plaintiffs by convincing them that the terms of the agreement were favorable to them and that the arbitrator's decision would not be binding or exclusive. *Id.* at 568. We concluded that the formation of the contract involved unconscionable surprise "because defendant affirmatively concealed the arbitration rider's terms." *Id.* at 567-69.

The facts here are markedly different from those in *Vasquez-Lopez*. Here, defendant updated its employee handbook in 2006 and notified plaintiff. Plaintiff, an experienced and educated professional, acknowledged and agreed that his employment was "governed by the handbook and the policies contained therein." *See Livingston*, 234 Or App at 152 (noting that the plaintiff was "highly educated" in determining that the employment agreement was not

unconscionable). The 2006 acknowledgement evidences plaintiff's awareness, at the very least, that the handbook existed and that it contained policies governing his employment. *See Wyss v. Inskeep*, 73 Or App 661, 667, 699 P2d 1161, *rev den*, 300 Or 64 (1985) ("All that was necessary was that the terms of the plan were capable of ascertainment and that plaintiff knew that there was a plan."). Further, although by its own terms, the 2006 handbook "supersede[d] and replace[d] any inconsistent Policies and all prior handbooks," plaintiff's 2000 acknowledgement explicitly informed plaintiff that his employment agreement included a binding grievance and arbitration procedure, and plaintiff, in executing that acknowledgement, expressly confirmed that, "[i]n the event that I am dissatisfied or disagree with any action taken by [defendant], I agree to submit the matter to the hospital's Grievance and Arbitration Procedures for final and binding resolution."[7]

We thus conclude that, unlike in *Vasquez-Lopez*, the procedure was not "hidden" from plaintiff here. There was no procedural unconscionability.

We turn finally to plaintiff's two "waiver" arguments. First, plaintiff contends that he did not explicitly waive his entitlement to pursue his claim under ORS 659A.030 in a judicial forum and, thus, any purported waiver in that regard is invalid. As support for that proposition, plaintiff invokes a federal appellate decision, *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F3d 756, 762 (9th Cir 1997), *cert den*, 523 US 1072 (1998), which issued 20 years after the enactment of the anti-age discrimination provisions of the antecedent of the current ORS 659A.030,[8] in which the court stated:

"Any bargain to waive the right to a judicial forum for civil rights claims * * * in exchange for employment or continued employment must at the least be express: the choice must be explicitly presented to the employee and the employee must explicitly agree to waive the specific right in question."

---

[7] As noted, 252 Or App at 213 n 3, there is no implication in this record that defendant engaged in some sort of "bait and switch" between 2000 and 2006, with the prescribed alternative dispute procedures in the latter varying from those in the former.

[8] Or Laws 1977, ch 770, § 1.

(Emphasis added.) Plaintiff emphasizes the "explicitness requirement" and proposes that we should "adopt the Nelson reasoning in this matter." We decline that invitation because Nelson is inapposite here.

In *Nelson*, the plaintiff, an electrical technician at the defendant's copper mine, complained that the employer defendant had violated the Americans with Disabilities Act and state law by terminating his employment after he experienced medical difficulties while working rotating 12-hour shifts. 42 USC §§ 12101 - 12213. The defendant had issued the plaintiff an employee handbook that contained a grievance and arbitration procedure, which stated that an employee is "precluded from filing any action with any court concerning any matter which could have been addressed through these procedures." *Nelson*, 119 F3d at 758. The district court granted summary judgment to the defendant because the court determined that the arbitration clause was enforceable and that the plaintiff had agreed to waive his right to a judicial forum. *Id.* at 759.

The Ninth Circuit reversed after first observing that "Congress can and sometimes does preclude waivers of a plaintiff's rights under a particular statute." *Id.* at 760. The court then determined that Congress had intended to restrict a plaintiff's waiver of the right to a judicial forum (in favor of arbitration) for ADA claims to situations where the plaintiff "knowingly and voluntarily" agreed to waive that right. *Id.* at 760-61. The court concluded that the plaintiff had not "knowingly and voluntarily" waived his right to a judicial forum because the choice was not "explicitly presented" to the plaintiff and the plaintiff did not "explicitly agree" to waive that specific right. *Id.* at 762. In so holding, the court applied the waiver analysis from a Title VII case, *Prudential Ins. Co. of America v. Lai*, 42 F3d 1299 (9th Cir 1994), *cert den*, 516 US 812 (1995). There, the court had held that it was "apparent from the text and legislative history of Title VII" that "Congress intended there to be at least a knowing agreement to arbitrate employment disputes before an employee may be deemed to have waived the comprehensive statutory rights, remedies

and procedural protections prescribed in Title VII and related state statutes." *Id.* at 1304. The *Lai* court, in turn, had derived the "knowing and voluntary" requirement from a senator's statement contained in the Congressional record associated with Title VII. *Id.* at 1305.

Plaintiff does not direct us to any similar legislative history in relation to ORS 659A.030—which is the sole basis for his age discrimination claim. We decline plaintiff's invitation to adopt the *Nelson* reasoning, because that reasoning is based on a statutory exegesis uniquely predicated on Title VII's particular legislative history.[9] Accordingly, we reject plaintiff's argument that the grievance and arbitration procedure is unenforceable based on his invalid waiver.[10]

Plaintiff alternatively argues that defendant waived its right to assert as a defense plaintiff's failure to utilize the grievance and arbitration procedure because defendant did not "press the issue" when plaintiff filed his charge of discrimination with the EEOC. As plaintiff acknowledges, there are no reported Oregon decisions addressing "when or under what conditions an employer waives the right to assert failure to exhaust internal remedies or the existence of an arbitration agreement as a defense" in the specific context of employment discrimination litigation. However, in *Wilbur-Ellis Co. v. Hawkins*, 155 Or App 554, 557-58, 964 P2d 291 (1998), we have more generally addressed that question with respect to a matter arbitrable under the Federal Arbitration Act (FAA). There, we noted that, given the FAA's strong policy of encouraging arbitration, "a party does not waive arbitration merely by engaging in action inconsistent with an arbitration provision." *Id.* at 558 (internal quotation marks omitted). Rather,

---

[9] We further observe, as noted previously, *see* 252 Or App at 224, *Nelson* issued 20 years after the enactment of the pertinent provisions of ORS 659A.030. Accordingly, the legislature, in enacting those provisions, could not be deemed to have somehow implicitly endorsed, and incorporated by reference, *Nelson's* reasoning and result.

[10] In addition to his invocation of *Nelson*, plaintiff also raises intertwined contentions that his waiver was not "knowing." Those contentions essentially overlap with features of plaintiff's procedural unconscionability argument, and we reject them for the same reasons. *See* 252 Or App at 223-24.

"the party seeking to prove waiver must show: (1) the adverse party had knowledge of an existing right to compel arbitration; (2) the adverse party acted inconsistently with that right; and (3) the action resulted in prejudice to the party opposing arbitration."

*Id.* We do not understand plaintiff to contest the applicability of that construct in this context.[11]

Plaintiff's waiver argument fails here because he cannot establish (at least) the second and third of the conjunctive components of that formulation. Specifically, as defendant emphasizes, its cooperation in the EEOC preliminary investigation process cannot, without more, be deemed to be inconsistent with its right to have the merits of the dispute and the appropriate relief, if any, ultimately, substantively determined pursuant to the prescribed alternative dispute resolution process. Further, even if defendant's conduct were somehow "inconsistent," plaintiff has not established, and cannot establish, cognizable prejudice. As noted, immediately after the termination of plaintiff's employment and before he initiated the EEOC process, defendant explicitly reminded plaintiff of the prescribed internal grievance and arbitration procedure. *See* 252 Or App at 211-12. Thereafter, nothing in the course of the EEOC investigation process precluded plaintiff from timely initiating a grievance pertaining to an asserted violation of ORS 659A.030—indeed, as noted, under the prescribed procedures, plaintiff had up to one year, the operative statute of limitations, to initiate such a grievance. *See* 252 Or App at 222. Defendant did not waive the alternative dispute resolution procedure.

In sum, the prescribed alternative dispute resolution procedure is not substantively unconscionable, and plaintiff's agreement to that procedure is not the product of unconscionable means. Further, plaintiff's "waiver" arguments are unavailing. Accordingly, the trial court did not err in dismissing plaintiff's action.

Affirmed.

---

[11] Indeed, the *Wilbur-Ellis* formulation is essentially identical to that set out in *United Computer Systems, Inc. v. AT & T Corp.*, 298 F3d 756, 765 (9th Cir 2002), which plaintiff does cite.